Hillsborough, Feb. 7, 1950. } No. 3886.

LEONORA COUSINS *v.* MARGARET ROY.

*Robert W. Upton, Frederic K. Upton* and *Vincent J. Broderick (Mr. Frederic K. Upton* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Wyman* orally), for the defendant.

JOHNSTON, C. J. The plaintiff testified that the accident happened in the following manner: "Q. Now tell us in your own language just what you did when you started down this stairway? A. When I got to the stairs I held on to the railing and I went down about three or four stairs. When I went to put my foot forward over the edge of the stairs my heel caught on the brass stripping and it threw me and I fell some place down near the bottom of the stairs. Q. Mrs. Cousins, when you started down that stairway did you take hold of anything with your hand? A. Yes, sir; I did. Q. What was that? A. The railing, the banister. Q. Which hand did you take hold of the banister with? A. My right. Q. And in which hand were you holding your purse? A. My left. Q. Where were you looking as you went down the stairway? A. Down. I always look down coming downstairs. Q. You were walking downstairs the way you normally do? A. Yes. Q. How do you know that your foot caught on the brass nosing? A. Well, it caught; it just caught my foot, that's all. Q. Could you feel anything? A. Yes, I felt it."

This account of the fall was supported by the plaintiff's expert, whose testimony was summarized in part in the plaintiff's brief as follows: "On both occasions he found that all the nosings were loose so as to tip back and forth under the fingers. All of them would tip enough to raise the rear edge about 1/16 of an inch and the nosing on the fourth tread from the top was so loose that its rear edge would rise about 1/8 of an inch. The pressure of the foot would cause them to rock or tilt, pulling the front down and lifting the rear edge of the nosing." The claimed dimness of light could not have been causal in this respect. While the plaintiff was looking down, it was as she always did; i.e., in the normal manner. She was not looking at the nosing where her foot was placed at the time it was set down, so that she could not have seen the raised rear edge of the nosing due to the pressure of the foot, even in the best of lights.

There was not sufficient evidence to warrant the submission to the jury of any other issue of inadequate lighting. The exception to the failure to submit the issue of proper lighting is overruled.

During the course of the testimony of the expert for the plaintiff, the Court excluded evidence concerning possibilities of accidents as follows: "Q. And what danger did these nosings present? A. Well, in the condition that they were in of more or less a rocking action back and forth, they would present an insecure footing. Q. What hazard or danger did they present to persons using those steps? A. They presented the hazard of some one losing their footing and the possibility of catching the foot or stubbing—

"*Mr. Wyman:* That is objected to and I move to strike.

"*The Court:* The latter part or the entire question, Mr. Wyman?

"*Mr. Wyman:* I'm not sure that I remember.

"(Answer read.)

"*The Court:* The latter part of the answer may be stricken.

"*Mr. Upton:* May I be heard on that objection?

"*The Court:* Yes.

"AT THE BENCH:

"*The Court:* All right; I'll hear you on the question of its admissibility.

"*Mr. Upton:* We are dealing with the question of risk, not only the question of causation, so that possibilities are perfectly admissible. Therefore I think he should be allowed to tell what may happen to a person who is using the steps.

"(Answer read.)

"*The Court:* I'll sustain the defendant's objection to the part of the answer that relates to possibilities. The portion of the answer in regard to hazard may stand. I'll save the plaintiff's exception.

BEFORE THE COURT AND JURY:

"Q. (*Mr. Upton*) Mr. Foster, when a person is descending those steps in the condition that you saw the steps, or one of the brass nosings, what is likely to ensue? . . .

"A. Well, the brass nosing, due to the weight of a person, is apt to move, that is, rock, and due to the fact that normally a person's foot is forward toward the front of the stair, it would lift the rear of the brass nosing and a person's heel could catch in it.

"*Mr. Wyman:* I object and move to strike.

"*The Court:* That may be stricken as far as a person's heel being caught in it. I'll save the plaintiff's exception to the ruling.

"Q. (*Mr. Upton*) Is there any probability that a person's heel would get caught in that nosing?

"*Mr. Wyman:* Objected to as leading.

"*The Court:* Objection sustained.

"Q. (*Mr. Upton*) What hazard or danger do these brass nosings present to a person descending the stairs? A. It presents the probability of losing their footing or catching their heel or losing their balance due to the movement of the surface underneath the person's foot."

The Court was in error in excluding evidence that the condition of the stairs was dangerous in that there was the possibility that one using them might catch one's foot. The plaintiff was seeking to put in evidence the hazardous character of the stairway rather than, at this time, the fact that the cause of her fall was the loose condition of the nosings. She herself had testified positively concerning the cause of her fall. The possibility of catching one's foot was a specific statement of the reason for characterizing the steps as dangerous. The evidence was relevant and admissible.

However, the erroneous exclusion of evidence is not ground for new trial unless it can reasonably be said that it may have caused the result of which complaint is made. *Emery* v. *Woodward, ante* 61; *Charles* v. *McPhee,* 92 N. H. 111, 113.

In offering the excluded evidence, the plaintiff sought to establish that there was such a chance of one's falling on the stairs that the defendant in the exercise of due care should have remedied them. She did not seek to reduce this chance to a mathematical formula but merely to show that there was such danger as, in the opinion of the jury, would induce a reasonable person to make repairs.

Following the exclusion, the expert testified that the nosings presented the probability of one's catching one's heel due to the movement of the surface beneath the foot. No objection was made to this testimony. In other words the witness was allowed to give the same testimony that had been stricken. This time it remained. The difference between the testimony that was allowed and that which was forbidden was unimportant under the circumstances, since the issue was one of the character of the stairs. Either referred to a certain indefinite chance of a person falling on the stairway, such a chance as, the plaintiff contended, would induce a person in the exercise of due care to make repairs.

. The plaintiff put before the jury the idea that she wished. It is not a ground for a new trial because she was not allowed to have expressed

by the witness a particular word if the desired idea, namely, the fact of the danger of falling, was presented to the jury by that witness. The correctness of instructions to juries does not depend upon certain phraseology. So the prohibition of a certain word by an expert witness is not reversible error, if he may fully express his opinion. 1 Wig. Ev. 248, s. 8a.

*Judgment for the defendant.*

DUNCAN, J., was of the opinion that there was evidence sufficient to warrant submission to the jury of the issue of lighting: the others concurred.