Coos,
No. 4495.

ETHYL R. SULLIVAN *v.* ROSE M. LEBLANC.

ERNEST O. SULLIVAN *v.* SAME.

ETHEL PILLSBURY *v.* SAME.

Argued September 4, 1956.

Decided October 2, 1956.

*Arthur J. Bergeron* and *H. Thornton Lorimer* (*Mr. Lorimer* orally), for the plaintiffs.

*Hinkley & Hinkley* (*Mr. Walter D. Hinkley* orally), for the defendant.

DUNCAN, J.  The defendant excepted to submission to the jury of the issue of whether she had violated the statutory requirements relating to the use of signals on turning, and on stopping or suddenly reducing speed.  She further excepted "to the giving of the

mirror statute on the ground that failure to look or to see could not have been causal." The motions for nonsuits and directed verdicts were grounded in part upon the alleged lack of any evidence to warrant the submission of these issues.

The statutory requirements with respect to signals appear in RSA 263:34-36. Section 35 provides that the signals required by section 34 may be given by either hand or mechanical signal, and the method of giving hand signals is prescribed by section 36. No claim was made that the defendant gave any turning signal by either method. There was evidence that her automobile was purchased new the year of the accident and there was no claim that it was not equipped with standard stop lights. Section 34 of the statute, which with sections 35 and 36 was read to the jury in the course of the instructions, provides as follows:

"TURNING MOVEMENTS AND REQUIRED SIGNALS. No person shall turn a vehicle at an intersection or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a highway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement. A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning. No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal."

The evidence warranted submission to the jury of the issue of whether the defendant had violated sections 34-36 of the statute. The defendant argues that there was no evidence that she in fact turned her vehicle from a "direct course," and that failure to signal an unexecuted intention to turn could not be causal of the accident. There was testimony however that "the car was just barely turned and we felt the impact almost instantaneously with the turn," that the defendant "went to turn in," that the "parking area was in perfect view" so that one plaintiff saw "the gravel where we were turned," that the defendant had "just barely started to turn" and that "we were turned a bit when we were struck." This was evidence from which the jury could find that the defendant did in fact turn her vehicle to the right; and it could find that she did

so without previously indicating her intention to turn as the statute required. Her own testimony that she made no turn, and certain extra-judicial statements made by the plaintiffs if inconsistent with their testimony on the stand, did not require belief but merely served to create an issue for the jury.

The defendant further argues that a vehicle engaged in passing her could not be "affected by" her turning to the right, within the meaning of the statute. However, since the operator of the other automobile testified that he never came abreast of the defendant's automobile when he undertook to pass, but only "got up behind her when I saw those lights coming," the jury could find upon the evidence that had signals been given by the defendant for one hundred feet before turning as required by statute, the other operator, as he testified, would not have undertaken to pass. If such a finding were made, the failure to give the required signals could properly be found to have been causal.

The argument that the statute was not designed to protect the plaintiffs because they were passengers in the defendant's automobile rather than in a vehicle which might be "affected by" the turn (s. 34) cannot be adopted. The purpose of the statute is clearly to prevent collisions with other vehicles as a result of a change in direction or speed without warning. In the absence of any express limitation in the statute, its benefits are deemed to extend to any persons who would be endangered by the collision sought to be prevented. The plaintiffs clearly fall within that class. The circumstances were not analogous to those before the court in *Hersey* v. *Fritz*, 91 N. H. 484, relied upon by the defendant. Rather the construction of the statute is governed by principles set out in *Fontaine* v. *Charas*, 87 N. H. 424.

The question of whether the defendant stopped, or suddenly decreased her speed, without a signal was also an issue for the jury. Since the vehicle was comparatively new the jury could reasonably find that its stop lights were in operating condition in the absence of a claim to the contrary. The defendant testified that she did not apply the brakes, and that when the collision occurred she had slowed her speed to 20 to 25 miles an hour by "releasing" the gas. One of the plaintiffs testified however that she made an abrupt stop, and the other that she "practically stopped" the vehicle before the collision. Whether the change in speed resulted merely from "releasing" the gas on the upgrade, or from an application of the brakes which would operate the signal lamps, and whether

there was in fact any stop or sudden decrease in speed within the meaning of the statute, were issues for the jury on the conflicting testimony.

The instructions with respect to the defendant's use of her rear view mirror included quotation of the statute requiring that a mirror be attached to any closed motor vehicle (RSA 263:22), and embodied the principles set forth in *Howe* v. *Phofolos,* 85 N. H. 539. The defendant's testimony that she looked in the mirror and "there was nobody in sight" was contradicted by a prior statement that she was "not sure [if she] even looked in the mirror." Whether she in fact used the mirror and, if so, whether the other automobile was then visible and should have been seen were questions for the jury. See *Murphy* v. *Granz,* 91 N. H. 244, 248. If it were found that the other vehicle was then to the defendant's rear, even though not in the defendant's lane of travel, it could still be found "immediately to the rear" within the meaning of the statute. RSA 263:34, *supra.* The defendant's testimony that she would have signaled her proposed turn had she been aware of the other vehicle to her rear presented an issue of causal negligence with respect to use of the mirror which was properly submitted to the jury. The motions for nonsuits and directed verdicts were properly denied.

Over the objection and exception of the defendant, testimony was received from the operator of the other vehicle that if he had seen signals from the defendant's vehicle ahead, "[since he] had been behind her for some distance, [he] would know what she was going to do, and . . . would have slowed down and given her the right of way." The defendant had consistently maintained that any failure to give the statutory signals could not have been causal of the accident. The testimony which was objected to tended to contradict this assertion, and to establish that violation of the statute was causal. It was in the nature of an opinion upon a hypothetical state of facts and was properly received. *Sanders* v. *Welch Co.,* 92 N. H. 74, 81; *Dimock* v. *Lussier,* 86 N. H. 54. The defendant's exception to the exclusion of certain testimony the substance of which was later received in response to questions in different form cannot be held to disclose prejudicial error.

The exception to the argument to the jury by plaintiff's counsel as to "what benefit is it to him to put the directional lights on after you turn" was based upon an objection that there was no evidence that this was done, and it is now argued that the defendant made no turn. The argument to the jury contained no assertion that the

defendant gave any signal after she turned, and the jury could find that a partial turn in fact was made. The argument was properly allowed to stand.

The Trial Court denied the defendant's motion to withdraw from consideration by the jury any claim that the defendant failed to signal an intention to stop or to decrease her speed suddenly, upon the ground that the claim was waived by counsel's failure to argue it to the jury. There was no error in denying the motion. Counsel are not required to argue every issue at length before the jury at the peril of otherwise waiving issues supported by evidence. An inference that claims with respect to matters not argued are waived cannot be held to be compelled as a matter of law. See *Mann* v. *Company*, 90 N. H. 1.

Exceptions to the denial of requests for instructions which have not been expressly waived are disposed of by what has been said with reference to the motions previously considered. There should be

*Judgment on the verdicts.*

All concurred.