Belknap
No. 7702

PETER L. WERNER

v.

ROBERT MONTANA

September 30, 1977

722

*Alfred Catalfo, Jr.* and *Daniel M. Cappiello,* of Dover (*Mr. Cappiello* orally), for the plaintiff.

*Nighswander, Lord, Martin & KillKelley,* of Laconia (*Mr. David J. KillKelley* orally), for the defendant.

LAMPRON, J. This is an action brought by plaintiff seeking to rescind his purchase from defendant of a Friendship Sloop known as the White Eagle. Robert Montana having deceased, Helen Montana, executrix, was substituted as defendant. Trial was had before a Master (*Charles T. Gallagher,* Esq.), who recommended judgment for the plaintiff and verdict in the amount of $13,250. The master further recommended that defendant pay any bills outstanding for the storage of the White Eagle. The master's recommendation was approved and an order issued in accordance therewith by *Keller,* C.J. Defendant excepted to the order and to various findings and rulings by the master. Defendant also filed a motion to vacate the verdict. The master's recommendation that this motion be denied was approved by *Batchelder,* J., subject to defendant's exception. Thereafter all questions of law raised by the foregoing exceptions and by other exceptions taken in the course of trial were reserved and transferred by *Batchelder,* J.

Defendant purchased the Friendship Sloop known as the White Eagle in 1955. Sometime in 1971 defendant decided to sell the sloop and on or about September 1, 1971, plaintiff and defendant began discussing its sale. On October 17, 1971, the parties signed an "Intent to Purchase and Sell," with an agreed price of $13,500 for the sloop. The price was later reduced by $250 and on January 1, 1972, the parties signed a bill of sale for the White Eagle with a sale price of $13,250.

At the end of June 1972, plaintiff put the White Eagle into the water. After allowing ordinarily sufficient time for the planking to swell, or "make up," to form a watertight hull, plaintiff found that the White Eagle still leaked and could not be sailed. Plaintiff then discovered that there was extensive dry rot in the hull and that the cost of repairs would be substantial. After some discussions with defendant in the course of the summer concerning the problem, on September 8, 1972, plaintiff wrote defendant a letter complaining about the dry rot and unseaworthiness of the White Eagle and demanding that defendant take back the White Eagle and refund the purchase price. Defendant refused and plaintiff brought this action.

The basis for plaintiff's action is that there was a breach of an express warranty. RSA 382-A:2-313. Plaintiff alleged that defend-

ant, in the course of negotiations prior to sale, made certain statements to the effect that the White Eagle would "make up" when placed in the water and become watertight, and that such statements amounted to an express warranty as to the sloop's condition. Defendant argues that any statements made by defendant prior to sale could not be admitted or considered as constituting an express warranty by virtue of RSA 382–A:2–202 (Parol or Extrinsic Evidence Rule). Defendant further argues that because the bill of sale incorporated by reference defendant's advertisement for the White Eagle, which included the statement "[y]our survey is welcome," the sale as well as all statements made by defendant were conditioned on such a survey being made.

Under the Uniform Commercial Code an express warranty may be created by a seller who makes "any affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain." RSA 382–A:2–313(1)(a). In addition, "any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." RSA 382–A:2–313(1)(b).

■ In general, affirmations of fact made by a seller about the goods being sold are considered a part of the description of the goods and are regarded as forming a part of the sales agreement. Uniform Laws Comment 3 to RSA 382–A:2–313; 1 R. Anderson, Uniform Commercial Code § 2–313:45 (2d ed. 1970). There was evidence that during the course of negotiations the parties had discussed the ship's watertightness and that defendant had told plaintiff that the White Eagle would become watertight once placed in water and allowed sufficient time to "make up." Considering the negotiations of the parties as a whole, particularly plaintiff's concern with whether the White Eagle was watertight, and considering the importance of watertightness for a ship, these assurances by defendant regarding the condition of the White Eagle could properly be considered as making part of the basis of the bargain. See 1 R. Anderson, supra § 2–313:7. Therefore, unless the master was otherwise precluded from considering these statements by defendant, the master did not err in granting plaintiff's request for findings and rulings that these affirmations or descriptions of the White Eagle by defendant created an express warranty under both RSA 382–A:2–313(1)(a) and (b). See Fargo Machine & Tool Co. v. Kearney & Trecker Corp., 428 F. Supp. 364 (E.D.

Mich. 1977); *Capital Equipment Enterprises, Inc. v. North Pier Terminal Co.,* 117 Ill. App. 2d 264, 254 N.E.2d 542 (1969).

■ RSA 382–A:2–202 excludes evidence of any additional oral agreement or terms when a written agreement is intended by the parties to be a final expression of their agreement. However, unless the writing was intended as a complete and exclusive statement of the terms of the agreement, evidence of consistent additional terms is admissible. RSA 382–A:2–202(b). There was no evidence that the writings in this case, the notice of intent to purchase, the bill of sale, and the advertisement incorporated therein by reference, were intended by the parties as constituting a complete and exclusive statement of the terms of their agreement. The master therefore could properly find defendant's statements regarding the White Eagle's watertightness as being an express warranty which was a consistent additional term of the agreement. *See Shore Line Properties, Inc. v. Deer-O-Paints & Chemicals, Ltd.,* 24 Ariz. App. 331, 538 P.2d 760 (1975), *Centennial Ins. Co. v. Vic Tanny International,* 46 Ohio App. 2d 137, 346 N.E.2d 330 (1975); 1 R. Anderson, Uniform Commercial Code § 2–313:22; R. Nordstrom, Sales § 53 (1970).

■ The master found the statement in the advertisement, "[y]our survey is welcome," to mean only that defendant "was touting" the White Eagle and that this statement was not inconsistent with the express warranty. The meaning of this statement as a term of the contract between the parties was a question to be resolved by the master as the trier of fact. *O'Donnell v. Cray,* 109 N.H. 223, 248 A.2d 83 (1968). On the evidence before him the master could properly find that a survey by the plaintiff was not a condition on the express warranty made by defendant. RSA 382–A:2–313(2).

■■ Defendant argues that plaintiff failed to prove a breach of warranty because the evidence did not establish that the leaking of the White Eagle was caused by the dry rot, or by any other cause, and therefore did not establish that the leaking constituted a breach of the alleged warranty. It is true that the master found there was no evidence to connect the leaking with the dry rot in the hull. However, the master did not find that defendant had made any warranty that the White Eagle was free from any dry rot. Rather, the master found that defendant had told plaintiff that the White Eagle was suitable for sailing, and that defendant's state-

ments which created the warranty were to the effect that the White Eagle had not leaked and would not leak after a sufficient swelling period was allowed. The master found that the White Eagle's "inability to 'make up' " created a breach of this warranty. While it is true that there was no evidence to establish the cause of the leaking, such evidence was not necessary. The plaintiff was required only to establish the existence of an express warranty and to establish that the White Eagle was defective in that its condition did not comply with the condition warranted by defendant. *Hansen v. Firestone Tire and Rubber Co.*, 276 F.2d 254, 258 (6th Cir. 1960); *Fargo Machine & Tool Co. v. Kearney & Trecker Corp.*, 428 F. Supp. 364, 373–74 (E.D. Mich. 1977); *McCarty v. E. J. Korvette, Inc.*, 28 Md. App. 421, 437, 347 A.2d 253, 264 (1975); *Swenson v. Chevron Chemical Co.*, 234 N.W.2d 38 (S.D. 1975). The evidence was undisputed that the White Eagle continued to leak and was not seaworthy despite being allowed to soak for over six weeks. Plaintiff therefore met his burden establishing the boat's defective condition.

 Defendant also argues that any warranty made related only to the condition of the White Eagle at the time of sale and that plaintiff failed to prove that the White Eagle was not as warranted at that time. While an express warranty generally related only to the condition of the goods at the time of sale, a warranty may relate to another point in time if so specified. 1 R. Anderson, *supra* § 2–313:12. The warranty found by the master to have been made by defendant was that the White Eagle would not leak; that it would be tight after a two-week swelling period. The discussions between the parties prior to sale occurred after September 1, 1971, and the bill of sale was dated January 1, 1972. It would not be until the following spring or summer that plaintiff would have the first occasion to put the White Eagle in the water and allow for the swelling defendant indicated would occur. The warranty as to tightness therefore did not relate simply to the condition of the White Eagle as of the date of sale, but necessarily related to the time when the boat would be put in the water and prepared for sailing. Under these circumstances defendant's statement amounted to an express warranty and did not constitute a guaranty of future performance. *See* R. Anderson, Uniform Commercial Code § 2–313:12.1 (1970–1974 Cum. Supp.).

■■ Although plaintiff could prove a breach of the warranty by establishing that the White Eagle was defective at the time it was placed in the water, it was nevertheless also necessary that plaintiff prove that his care of the boat following its purchase was proper, and that no failure on his part contributed to its defective condition. *Heil v. Standard Chemical Manufacturing Co.*, 301 Minn. 315, 223 N.W.2d 37 (1974); *Colorado Serum Co. v. Arp*, 504 P.2d 801 (Wyo. 1972). Although plaintiff did not present detailed evidence regarding his care of the White Eagle between the time of purchase and the time it was put in the water, there was nevertheless sufficient evidence from which the master could conclude that plaintiff's care of the boat had been proper and that no failure on plaintiff's part was a cause of the leaking. Plaintiff testified that he and defendant together covered the boat in the fall of 1971 and prepared it for the winter. Plaintiff also testified that he discussed with defendant the procedures for preparing and launching the boat in the spring of 1972 and that he relied on defendant's guidance and advice so as to properly prepare and launch the boat. On the basis of the testimony the master could find that plaintiff had cared for the White Eagle in a manner which was both proper and consistent with defendant's warranty that the boat would not leak.

■■ Defendant argues that even if plaintiff established a breach of an express warranty, plaintiff was not entitled to a remedy either of rescission or of revocation. Defendant argues that because there is no provision for rescission in the Uniform Commercial Code, that remedy is unavailable to plaintiff. Although plaintiff's action was brought as a bill of rescission, and although it is true that the Uniform Commercial Code does not specifically provide for "rescission," other courts have held, and commentators agree, that rescission and revocation of acceptance amount to the same thing under the Uniform Commercial Code, particularly since cancellation is a remedy available to a buyer who has established revocation of acceptance. RSA 382–A:2–711(1); *Prince v. LeVan*, 486 P.2d 959, 962–63 (Alas. 1971); *Lanners v. Whitney*, 247 Ore. 223, 234, 428 P.2d 398, 403 (1967); *see* New Hampshire Comments to RSA 382–A:2–608; 2 R. Anderson, Uniform Commercial Code §§ 2–608:8, 2–711:19 (2d ed. 1971). The issue is therefore whether plaintiff established the elements necessary for a revocation of acceptance under RSA 382–A:2–608.

A buyer may revoke his acceptance when the nonconformity of the goods substantially impairs their value to him, if his acceptance was "without discovery of such non-conformity if his acceptance was reasonably induced . . . by the seller's assurances." RSA 382–A:2–608(1)(b); *Lanners v. Whitney*, 247 Ore. 223, 234, 428 P.2d 398, 402 (1967). The buyer must also notify the seller of his revocation of acceptance "within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in the goods which is caused by their own defects." RSA 382–A:2–608(2). In his supplemental report the master found that the leaky condition of the White Eagle "was not discoverable until she was put in the water in the 1972 season," and that "plaintiff revoked his acceptance of the boat within a reasonable time thereafter." The master also found that "[t]he excessive leaking substantially impaired the boat's value to [plaintiff] within the meaning of RSA 382–A:2–608 even without evidence of the dollar amount of impairment involved." The master concluded that all the elements necessary for revocation of acceptance were present.

Defendant argues that plaintiff failed to present any evidence to show impairment of value. In *Asciolla v. Manter Oldsmobile-Pontiac, Inc.* 117 N.H. 85, 370 A.2d 270 (1977), we pointed out that although the trier of fact must make an objective determination that the value of the goods has been substantially impaired, it is nevertheless a question to be determined from the perspective of the particular individual. *Id.* at 88–89, 370 A.2d at 273. Common sense would indicate that excessive leaking in a wooden sailing sloop, such as to render it unseaworthy, would generally impair the value of the boat substantially for anyone. In light of the testimony regarding the boat's leaking, the master was certainly entitled to believe plaintiff's testimony that the leaking of the White Eagle substantially impaired its value to him as a sailing sloop. Plaintiff was not required to prove a diminution in monetary value. 2 R. Anderson, *supra* § 2–608:13. Defendant argues that because plaintiff introduced no evidence to link the dry rot in the hull with the excessive leaking, and because the only evidence introduced as to the cost of repair related to the repair of the dry rot, plaintiff failed to establish that the defective condition of the White Eagle was more than a trivial defect which could be easily adjusted or repaired at little cost. *See Asciolla v. Manter Oldsmobile-Pontiac Inc.*, 117 N.H. at 90, 370 A.2d at 274;

*Herbstman v. Eastman Kodak Company,* 68 N.J. 1, 9, 342 A.2d 181, 185 (1975); 2 R. Anderson, *supra* § 2–608:10.

 Consideration of the cost and extensiveness of repairs required is only one of the criteria for determining whether the value of the goods for the buyer has been substantially impaired. Even when notified by plaintiff of the excessive leaking which continued despite an extended period of soaking, defendant did not offer a ready solution to alleviate the problem. In any event, even if the leaking could be readily repaired, this leaking constituted a defect in an essential part of the boat, not just a trivial part, and the continued leaking, coupled with the discovery of dry rot, could be reasonably considered to have severely undermined plaintiff's confidence in the soundness of the White Eagle as a sailing vessel. The master therefore did not err in finding that the value of the White Eagle had been substantially impaired. *See Asciolla v. Manter Oldsmobile-Pontiac, Inc.,* 117 N.H. at 89–90, 370 A.2d at 274.

 Although reliance on the part of the buyer is not necessary for the creation of an express warranty, the master properly found that plaintiff did in fact rely on defendant's affirmation that the boat would not leak and it became part of the bargain. R. Nordstrom, Sales § 68 (1970). As plaintiff did not discover the leaking problem until several months after his purchase, it is clear that plaintiff accepted the White Eagle without discovery of the nonconformity, and that plaintiff's acceptance of the White Eagle was in part induced by defendant's assurances that the boat would be watertight, thus meeting the requirements of RSA 382–A:2–608(1)(b) for revocation of acceptance. There is also evidence to support the master's finding that plaintiff notified defendant of the defective condition of the White Eagle and of his revocation of acceptance within a reasonable time after he discovered and was able to ascertain the extensiveness of the leaking problem. The master's verdict for the plaintiff was therefore correct. RSA 382–A:2–711(1); RSA 382–A:2–715(1).

 Defendant also argues that because plaintiff's complaints in the summer of 1972 as well as his litigation of this case focused on the dry rot in the hull of the White Eagle, defendant was not given notice of any other defect, and had no opportunity to cure any other defect. There is ample evidence in the record that defendant had notice of the White Eagle's excessive leaking. Whether or not he had an opportunity to cure either the dry rot

or any other possible cause of the leaking is not relevant to this case. In the context of revocation, RSA 382–A:2–608(1)(a) speaks to the seller's opportunity to seasonably cure a defect. A reading of this section indicates that this refers to a situation where the buyer accepts the goods with knowledge of the defect, but with the expectation it will be cured. 2 R. Anderson, *supra* § 2–608:4. Such was not the situation in this case.

Defendant also argues that the master erred in excluding from evidence a survey report on the White Eagle by David Lusty, of Lusty and Turner, which had been prepared for plaintiff, at his request, prior to his decision to purchase the boat. Defendant sought admission of the survey report on two grounds. The first was for the purpose of showing plaintiff's knowledge of the White Eagle's condition at the time of purchase. The second was that fairness required admission of the complete report, as plaintiff's counsel had introduced some of the report's substance during direct examination of plaintiff and during cross-examination of defendant's expert witness.

■■■■ In a case involving an express warranty, knowledge of the goods' condition on the part of the buyer may be relevant if the buyer has made his own inspection, and has relied on that inspection rather than on any description or representations by the seller. *Alan Wood Steel Co. v. Capital Enterprises, Inc.*, 39 Ill. App. 3d 48, 57, 349 N.E.2d 627, 635 (1976); *Sylvia Coal Co. v. Mercury Coal & Coke Co.*, 151 W. Va. 818, 827, 156 S.E.2d 1, 7 (1967). The fact that the buyer has inspected the goods will not necessarily negate an express warranty if the inspection did not reveal the defects in contradiction of the seller's assurances, and if the buyer relied on the seller's representations. *Capital Equipment Enterprises, Inc. v. North Pier Terminal Co.*, 117 Ill. App. 2d 264, 270, 254 N.E.2d 542, 545 (1969). The Lusty and Turner survey report was therefore admissible for the purpose of showing plaintiff's knowledge of the condition of the White Eagle at the time of purchase. However, the substance of the report could not have been introduced as proof of the condition of the boat.

■■■ A reading of the transcript reveals, however, that in cross-examining plaintiff, defendant's counsel was able to introduce into the record essentially all parts of the survey report which defendant now claims would have a bearing on plaintiff's knowledge. As the master was able to consider the relevant portions of

the survey report, we do not find any prejudice to defendant resulting from the introduction of this evidence by way of cross-examination rather than directly. *Sullivan v. LeBlanc,* 100 N.H. 311, 315, 125 A.2d 652, 655–56 (1956); *Cousins v. Roy,* 96 N.H. 126, 129, 71 A.2d 416, 418 (1950). Similarly, because of the extensive use of the report by defendant's counsel in cross-examining plaintiff, the master's ruling that the report was not admissible did not violate any principle of fairness to the defendant which might have required that the full report be admitted into evidence. *See Clapp Co. v. McCleary,* 89 N.H. 65, 67–68, 192 A. 572, 573–74 (1937).

■ Defendant's final argument is that the master erred in granting plaintiff's request for a finding and ruling that plaintiff "had had the boat properly stored and has held same with reasonable care." A buyer who has revoked acceptance "has the same rights and duties with regard to the goods involved as if he had rejected them." RSA 382–A:2–608(3). However, after he revoked his acceptance of the White Eagle plaintiff had at most the duty to hold the boat with reasonable care for a time sufficient to permit defendant to remove it. RSA 382–A:2–602(2)(b). The plaintiff has stored the White Eagle for a period of time beyond that necessary for the defendant to recover possession. Although a witness for defendant testified that the White Eagle was not properly covered at Winnipesaukee Cruiser Sales, and there were photographs introduced to substantiate this claim, there was no testimony that the White Eagle had in fact suffered from any improper care in storage. According to plaintiff's testimony he had taken the White Eagle to Winnipesaukee Cruiser Sales for storage and had instructed them to keep the boat in storage condition, and in addition had insured the boat. On the record before us we cannot say that the evidence did not support the master's finding that plaintiff exercised reasonable and proper care in storing the White Eagle. *Wescott v. Lumbermens Mut. Cas. Co.,* 111 N.H. 10, 273 A.2d 684 (1971).

*Defendant's exceptions overruled.*

All concurred.