Rockingham
No. 80-217

GERALD F. WELCH & *a.*

v.

FITZGERALD-HICKS DODGE, INC. & *a.*

May 7, 1981

*Nedved, Senn & Redden,* of Nashua (*Donald M. Redden* on the brief and orally), for the plaintiffs.

*Gall, Shapiro & Groff,* of Nashua, for the defendant Fitzgerald-Hicks Dodge, Inc., joins in the brief of the defendant Chrysler Corporation.

*Devine, Millimet, Stahl & Branch P.A.,* of Manchester (*George R. Moore* on the brief and orally), for the defendant Chrysler Corporation.

KING, J. The plaintiffs, displeased with an automobile they had purchased, brought suit against the defendants in four counts. The first count alleged a violation of the consumer protection statute, RSA ch. 358-A (Supp. 1979). The second and third counts alleged breaches of express and implied warranties under the Uniform Commercial Code, RSA ch. 382–A. The fourth count alleged violations of the Magnuson-Moss Warranty Act, 15 U.S.C.A. §§ 2301–2312 (1979). At the close of the plaintiffs' case, the Trial Court (*Mullavey,* J.) granted the defendants' motion for a non-suit with respect to the plaintiffs' first count. The court denied the motion

with respect to the plaintiffs' other counts but reserved the defendants' right to renew the motion at the close of the evidence, before the case went to the jury. At the close of the defendants' case, the court granted the defendants' motion for a directed verdict with respect to the plaintiffs' remaining three counts. The plaintiffs appealed.

■ In reviewing the plaintiffs' exception to the trial court's granting of the defendants' motions for non-suit and directed verdict, we must consider the evidence in the light most favorable to the plaintiffs. *Foss v. Byrnes Chevrolet, Inc.*, 119 N.H. 808, 809, 408 A.2d 415, 415 (1979); *Sargent v. Alton*, 102 N.H. 476, 478, 160 A.2d 345, 346 (1960). The plaintiffs' evidence need not be conclusive. *Watson v. Company*, 83 N.H. 200, 205, 140 A. 169, 172 (1928). It is sufficient for the plaintiffs to establish that the evidence presented could support a jury verdict in their favor. *See Sargent v. Alton, supra* at 478, 160 A.2d at 346; *Leonard v. Manchester*, 96 N.H. 115, 117, 70 A.2d 915, 917 (1950). Accordingly, we review the facts of the case as the plaintiffs presented them.

In May, 1977, the plaintiffs, Gerald and Jana Welch, purchased a new Dodge Monaco station wagon from the defendant Fitzgerald-Hicks Dodge, Inc., at a cost of approximately $7,549. The automobile was manufactured by the defendant Chrysler Corporation. Subsequent to the purchase of the station wagon, the plaintiffs experienced numerous difficulties with the vehicle and brought it back to Fitzgerald-Hicks Dodge for repairs approximately thirteen times between May, 1977 and October, 1977.

During this six-month period, the automobile required repairs too numerous to list. Accordingly, we mention only the more serious of them. The transmission was first repaired and then replaced. The carburetor was repaired or adjusted several times. The starter-clutch was replaced. A leak in the fuel tank was repaired. The paint finish was repaired on the roof, hood, front fender, quarter panel, and dashboard. Peeling overlay was also repaired. Most of these problems were repaired to the plaintiffs' satisfaction.

A continuing problem with the automobile, however, was a "shimmy" that could be felt when the car was driven. The plaintiffs first noticed this problem on the day they purchased the vehicle. After Fitzgerald-Hicks Dodge attempted to fix this problem, it informed the plaintiffs that the tires were causing the problem. The plaintiffs then took the car to a Firestone dealer. The dealer replaced the Firestone 500's that were on the car with a set of Firestone 721's. This failed to alleviate the problem and after

Fitzgerald-Hicks Dodge continued to insist that the tires were the cause of the "shimmy," the tire dealer placed another new set of 721's on the car. When this failed to remedy the problem, the dealer diagnosed the problem as a bent rear axle. Fitzgerald-Hicks Dodge then replaced the axle, but although the vibration in the rear ceased, the "shimmy" continued. At some point, Fitzgerald-Hicks Dodge replaced the Firestone tires with Goodyear tires, but this also had no effect. Throughout this period, the tires were frequently balanced, and the front end was aligned at least once, in unsuccessful attempts to eliminate the "shimmy."

All of these repairs were performed under the warranty. Consequently, although the cost of repairs totalled approximately $1,012.72, the plaintiffs did not pay anything for them, with the exception of a payment of approximately $20 to the Firestone dealer. It is obvious, of course, that bringing the automobile in for such frequent repairs would cause inconvenience and lead to loss of confidence in the integrity and reliability of the automobile.

On November 14, 1977, the plaintiffs returned the automobile to Fitzgerald-Hicks Dodge. The plaintiffs returned the keys to the vehicle and, by letter delivered along with the keys, revoked their acceptance and demanded the return of the purchase price. The defendant refused, and the plaintiffs filed this suit.

Because the plaintiffs presented their case in four counts, some of which require different elements of proof, we consider the propriety of the trial court's actions with respect to each individual count. Counts II and III, however, will be discussed together.

■ Count I alleged that the defendants employed an unfair method of competition or an unfair or deceptive act or practice in violation of RSA 358-A:2 (Supp. 1979) in that they failed to fulfill the promise contained in the warranty to repair all defects occurring in the automobile within the first twelve months or 12,000 miles from the day of sale. The plaintiffs presented no evidence, however, to establish that the defendants acted in bad faith, dishonestly, or in any way attempted to take unfair advantage of them. Indeed, the plaintiffs testified that they were generally satisfied with the service they received. We fail to see how the good faith attempts of the defendants to comply with the terms of a standard warranty can be classified as an unfair or deceptive practice within the meaning of RSA 358-A:2 (Supp. 1979). There may be circumstances under which failure to comply with a warranty would constitute an unfair or deceptive practice, but this is not such a case.

Counts II and III allege that the defendants breached their express warranty, RSA 382–A:2–313; their implied warranty of merchantability, RSA 382–A:2–314; and their warranty of fitness for a particular purpose, RSA 382–A:2–315. The counts further allege that the breach of these warranties substantially impaired the value of the automobile to the plaintiffs and that the plaintiffs were therefore entitled to revoke their acceptance of the vehicle and receive back the purchase price. RSA 382–A:2–608.

■ The defendants contend that they complied with their express warranty obligations by correcting the problems with the vehicle as they developed. The defendants concede, however, that problems still existed with the automobile. The defendants specifically acknowledge that the car "shimmied," although they dispute the severity of the "shimmy" and contend that it is within tolerable limits. Whether a "shimmy" is severe enough to constitute a defect is a matter for the jury. See Foss v. Byrnes Chevrolet, Inc., 119 N.H. at 809, 408 A.2d 415. The plaintiffs' expert testified that the car "shimmied" and that, although many cars had such a "shimmy," the "shimmy" was a problem and should have been fixed. The plaintiffs also testified that the "shimmy" was unacceptable to them and caused them to lose confidence in the car. There was, therefore, sufficient evidence to enable the jury to find that the defendants breached their warranty to repair defects.

■ The defendants also contend that the directed verdicts in their favor were proper because there was no evidence that they breached the warranty of merchantability. Specifically, the defendants assert that there was no evidence that the vehicle would not pass without objection within the automobile industry, or that it was not fit for the ordinary purposes for which it was used, or that it failed to be of average quality. RSA 382–A:2–314. We disagree. The plaintiffs testified that the vehicle "shimmied" when driven. The plaintiffs' expert also testified that the car "shimmied" and required repairs. On the basis of this evidence, the jury could have found that the car was not of average quality or fit for the ordinary purpose for which an automobile is used.

■ The defendants next argue that the plaintiffs failed to establish the existence of a warranty of fitness for a particular purpose. Elliott v. Lachance, 109 N.H. 481, 484, 256 A.2d 153, 155 (1969); RSA 382–A:2–315, Uniform Laws Comments; see 83 A.L.R.3d 669. The defendants are correct in their assertion that the plaintiffs failed to introduce any evidence that the plaintiffs had a particular purpose in purchasing the automobile or that they relied upon the

defendants' expertise in selecting the particular vehicle. Consequently, the trial court properly directed a verdict on this allegation.

 The defendants assert that the plaintiffs' revocation of acceptance was invalid because the evidence would not support a jury finding that the vehicle possessed a significant defect which substantially impaired the value of the vehicle to the plaintiffs. *See Asciolla v. Manter Oldsmobile-Pontiac, Inc.*, 117 N.H. 85, 86, 370 A.2d 270, 271 (1977). This position overlooks the testimony that the vehicle still "shimmied" after numerous attempts to repair it and that the "shimmy" existed at the time the plaintiffs revoked their acceptance. It is not necessary that the plaintiffs establish the cause of the defect. *See Werner v. Montana*, 117 N.H. 721, 728, 378 A.2d 1130, 1135 (1977). The plaintiffs need only prove that there was a non-conformity that substantially impaired the value of the motor vehicle to them. *Id.*; RSA 382–A:2–608. Moreover, the plaintiffs' testimony that the continuing problem undermined their confidence in the automobile and destroyed its value to them as a family automobile should not be ignored. It is true, as the defendants assert, that the subjective test of impaired value must be evaluated by objective standards. *See Asciolla v. Manter Oldsmobile-Pontiac, Inc., supra* at 89, 370 A.2d at 273. But the question of whether a defect has substantially impaired the value of the automobile to the plaintiffs is one of fact to be determined by a jury. Furthermore, even if the problem of the "shimmy" were insufficient by itself to justify the plaintiffs' revocation of acceptance, the jury was free to conclude that the numerous defects in the vehicle justified the plaintiffs' revocation of acceptance notwithstanding that the defendants had repaired many of them. The jury could find that the series of defects and problems that the plaintiffs experienced with the automobile reasonably destroyed their confidence in the integrity and reliability of the vehicle. *See Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 354 (Minn. 1977); *Asciolla v. Manter Oldsmobile-Pontiac, Inc., supra* at 89, 370 A.2d at 274. When the number of problems with the vehicle becomes so large as to call into question the integrity of the automobile, the value of the vehicle to the buyer may be substantially impaired and the buyer justified in revoking his acceptance even though some of the problems have been repaired or are repairable. *See Durfee v. Rod Baxter, Inc., supra* at 354–55; *Tiger Motor Company v. McMurtry*, 224 So. 2d 638, 646–47 (Ala. 1969).

 The defendants also argue that the plaintiffs' revocation of acceptance was untimely and therefore invalid because they

had driven the vehicle for five months and 11,000 miles. While ordinarily this might have a limited persuasiveness, *see Sanborn v. Aranosian*, 119 N.H. 969, 970, 409 A.2d 1352, 1353–54 (1979), we must reject it in this case. Where, as here, the seller's conduct induces the buyer to delay his revocation of acceptance, the time in which the buyer must revoke is extended. *See Gramling v. Baltz*, 253 Ark. 352, 358, 485 S.W.2d 183, 187–88 (1972); *Conte v. Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 122–23, 374 A.2d 144, 148–49 (1976); *Werner v. Montana*, 117 N.H. 721, 730, 378 A.2d 1130, 1133 (1977). The reasonableness of the delay is a question of fact for the jury. *See Frontier Mobile Home Sales, Inc. v. Trigleth*, 256 Ark. 101, 104, 505 S.W.2d 516, 517 (1974).

■■ Count IV alleged that the defendants' breach of their warranties constituted a violation of the Magnuson-Moss Warranty Act and that the plaintiffs were, therefore, entitled to return the automobile and recover the purchase price and their reasonable attorneys' fees. Under the act, a consumer who is damaged by the failure of a warrantor to comply with any obligation under the act or under a warranty may sue for damages and other legal and equitable relief. 15 U.S.C.A. § 2310(d)(1). The act contains no provisions creating warranties, and the substantive content of warranties is controlled by State law. Furthermore, because the act contains no guidelines concerning the measure of damages and the availability of certain kinds of relief, State law controls on this point as well. *See Novosel v. Northway Motorcar Corp.*, 460 F. Supp. 541, 545 (N.D.N.Y. 1978). The act explicitly states, however, that the consumer may recover reasonable attorneys' fees as part of his damages. 15 U.S.C.A. § 2310(d)(2). Accordingly, because the plaintiffs' evidence established a prima facie case under the Uniform Commercial Code, it also established a prima facie case under the federal act. It was error, therefore, for the trial court to direct a verdict for the defendants on this count.

For the reasons herein stated, we remand this case to the trial court for retrial on counts II, III, and IV.

*Remanded.*

All concurred.