[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-16103

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 10, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-01728-CV-TCB-1

CAR TRANSPORTATION BROKERAGE COMPANY, INC.,

Plaintiff-Appellant,

versus

BLUE BIRD BODY COMPANY,

Defendant,

JOHN BLEAKLEY R.V. CENTER, INC.,
d.b.a. John Bleakley Motor Homes,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 10, 2009)

Before EDMONDSON, Chief Judge, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

CAR Transportation Brokerage Company (hereinafter the "Buyer") appeals the district court's grant of summary judgment on its revocation of acceptance claim brought under O.C.G.A. § 11-2-608(1)(b). At issue is whether the district court properly granted summary judgment on this claim where the Buyer of a defective motor coach provided the seller with only one opportunity to cure the defects in the coach prior to revoking acceptance.

## I. BACKGROUND

The relevant facts of this case, as supported by the evidence construed in the light most favorable to the non-moving party, are as follows:

On December 31, 2004, the Buyer, a company located in Springdale, Arkansas, purchased a 2005 Blue Bird Wanderlodge LXi motor coach (the "Coach") from John Bleakley R.V. of Douglasville, Georgia (the "Seller") for $650,000. One month prior to this sale, the Seller had discovered that the Coach's electrical system was "going haywire" and had returned the Coach to the manufacturer for repairs. After the manufacturer returned the Coach, the Seller did not confirm that the problem had been solved. The Seller did not tell the Buyer about the prior repair work performed on the Coach.

Because the Buyer did not arrive on the lot until almost five p.m. on

December 31st and the Buyer was already familiar with vehicles like the Coach, the Seller did not perform its customary pre-delivery inspection and customer product orientation prior to delivering possession to the Buyer. The Seller, however, represented that the Coach was new and in working condition. The parties executed a purchase agreement, in which the Seller disclaimed all warranties, including any warranty for merchantability or for fitness for a particular purpose. The manufacturer provided a limited warranty, which the Seller gave to the Buyer pursuant to the purchase agreement. This warranty limited the manufacturer's obligation to the repair or replacement of parts which, under normal use and service, were defective in workmanship or material.

On the day of the purchase, as the Buyer was driving back to Arkansas from Douglasville, Georgia, it noted that the Coach's low-beam headlights were not working and that the step-cover had come out. It returned the Coach to the Seller the next morning for repairs. The Seller's service technicians found and repaired several electrical issues on the Coach. On January 5th, the Buyer, accompanied by the Seller's service technician, drove the Coach approximately thirty-five miles without incident. During this drive, the Seller's service technician told the Buyer that he had no experience repairing this particular model of motor coach. The Buyer then re-took possession of the Coach and returned home to Arkansas.

Over the next two months, however, the Coach had several other problems, including other issues with its electrical system. Because the Seller's service technician had told the Buyer that he was unfamiliar with this model of motor coach, the Buyer decided to take the Coach to the manufacturer for repairs, instead of returning it to the Seller. The manufacturer returned the Coach to the Buyer on February 18, without having completely repaired the electrical system. The manufacturer told the Buyer that a "circuit board" was required to fix the defect and assured the Buyer that the required part would be ordered, but the Buyer heard nothing more from the manufacturer regarding this potential fix.

On March 22, 2005, the Buyer's attorney wrote a letter to the Seller purporting to revoke acceptance of the Coach because "the vehicle has failed to perform in the manner required for a motor coach and thus is not merchantable." The Seller did not respond to the revocation letter.

The parties do not dispute that, as early as March 2005, the manufacturer was aware that the inverters of the 450 LXi coach were defective and would cause random operation of the coach's electrical components, such as was seen in the Coach. On November 30, 2005, the manufacturer discovered an inverter that would resolve the LXi coach's defect, but it did not notify its dealers of either the defect or the solution until March 10, 2006.

4

On July 24, 2006, the Buyer brought suit against the Seller[1] asserting claims for fraud, negligent misrepresentation, revocation of acceptance under O.C.G.A. § 11-2-608(1)(b), breach of implied warranty of merchantability, and violations of the Georgia Fair Business Practices Act. After discovery, the Seller moved for summary judgment on all of the claims and the Buyer moved for summary judgment on the issue of revocation.

The district court granted the Seller's motion and denied the Buyer's motion. The district court found, <u>inter alia</u>, that the Buyer was not entitled to revoke its acceptance of the Coach because the "limited opportunity to cure" provided by the Buyer was insufficient to satisfy "the Georgia law that before a buyer may bring a revocation claim, it must give the seller an opportunity to cure all known defects." The Buyer appeals, challenging only the grant of summary judgment on its revocation of acceptance claim. The Buyer asserts that the district court erred in finding that it was required by statute O.C.G.A. § 11-2-608(1)(b) to provide the Seller with an opportunity to cure prior to revoking. In the alternative, the Buyer argues that if it was obliged to give the Seller an opportunity to repair, there is at least a jury question as to whether the Buyer satisfied this requirement.

---

[1] The Buyer also named the manufacturer, Blue Bird Company, as a defendant in the original complaint. On August 28, 2006, however, the parties agreed to dismiss Blue Bird as a defendant.

The Seller responds that although O.C.G.A. § 11-2-608 does not require an opportunity to cure in all situations, the district court properly found that the Buyer was required to provide the Seller with an opportunity to cure in this case and that the Buyer failed to satisfy this requirement. The Seller also asserts that, even if the court erred by requiring an opportunity for repair, the district court could have granted summary judgment on the alternate ground that the Buyer performed acts after the alleged revocation which were inconsistent with the Seller's ownership of the Coach.

## II. STANDARD OF REVIEW

We review a district court's rulings on summary judgment de novo. Mega Life and Health Ins. Co. v. Pieniozek, 516 F.3d 985, 989 (11th Cir. 2008). "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law." Id.; Fed. R. Civ. P. 56(c).

An issue is genuine and material for purposes of summary judgment if the evidence before the court presents a sufficient disagreement to require submission to a jury and is not so one-sided that a party must prevail as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). A "court may grant summary judgment . . . against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A primary purpose of summary judgment is to isolate and eliminate factually unsupported claims or defenses. See id. at 323-24. As the Supreme Court has emphasized, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327 (quoting Fed. R. Civ. P. 1).

## III. DISCUSSION

*A.    Opportunity to Cure*

This case hinges on whether the district court erred in finding that, under Georgia law and the facts of this case, the Buyer was required to provide the Seller with an opportunity to seasonably cure the defects in the Coach prior to revoking its acceptance. The statute governing revocation, which is within Georgia's version of the Uniform Commercial Code ("UCC"), provides:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
>> (a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; *or*
>> (b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

7

> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
> (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

O.C.G.A. § 11-2-608 (emphasis added). On appeal, the Buyer asserts that because it accepted the Coach without discovery of its nonconformity and the nonconformity was not apparent, its revocation claim arose under § 11-2-608(1)(b), not subsection (1)(a), and it was therefore not required to provide the Seller with an opportunity to cure prior to revoking.

On its face, the plain language of O.C.G.A. § 11-2-608 requires a pre-revocation opportunity to cure only where a buyer knew about the nonconformity prior to acceptance and reasonably assumed that the nonconformity would be cured. Courts in a majority of jurisdictions, therefore, take the position that a seller has no right to cure nonconformities prior to revocation under UCC § 2-608(1)(b), that is, where the goods are accepted by the buyer without knowledge that it fails to conform to the sales contract. See, e.g., Preston Motor Co v Palomares, 650 P.2d 1227, 1231 (Ariz. 1982); Werner v. Montana, 378 A.2d 1130, 1136-37 (N.H. 1977); American Honda Motor Co., Inc. v. Boyd, 475 So. 2d 835, 839-40 (Ala. 1985) (holding that where buyer purchased a car, believing it to be new, and in fact

8

the car was previously damaged and repaired, and buyer did not discover this until after it had accepted car, the case fell under UCC § 2-608(1)(b), and therefore, there was no right to cure); U.S. Roofing, Inc. v. Credit Alliance Corp., 279 Cal. Rptr. 533, 540 (Cal. App. 3d Dist. 1991) (categorically stating that "[we] believe that the right to cure under [UCC § 2-508] does not apply to situations where the buyer seeks to revoke his acceptance under [UCC § 2-608]"); Jensen v. Seigel Mobile Homes Group, 668 P.2d 65, 69-70 (Idaho 1983) (holding that right to cure is relevant only when there has been a rejection of goods; following acceptance there is no right to cure, citing authorities for the proposition that cure is not available following the buyer's acceptance of goods); Head v. Phillips Camper Sales & Rental, Inc., 593 N.W.2d 595, 600 (Mich. App. 1999) (adopting majority view that "a seller has no right to cure a defect that was not discoverable when the buyer accepted the goods"); Bowen v. Foust, 925 S.W.2d 211, 215 n.6 (Mo. Ct. App. S.D. 1996) (noting that this remains the majority view, although the more recent cases allow opportunity to cure more willingly following an acceptance). Accordingly, where a buyer's acceptance is as described in UCC § 2-608(1)(b), the majority rule is that he may revoke the acceptance without waiting for a cure, seasonable or otherwise, by the seller.

A minority of state courts, however, interpret UCC § 2-608 as imposing

upon the buyer a duty to provide notice and an opportunity to cure in all cases of

revocation. These courts point to UCC § 2-608(3) which provides that a purchaser

revoking his acceptance "has the same rights and duties with regard to the goods

involved as if he had rejected them," and note that a seller has a general right to

cure nonconformities in rejected goods under UCC § 2-508.[2] By analogy, then,

they hold that a similar duty to provide notice and opportunity to cure exists in the

context of revocation. See, e.g., Conte v Dwan Lincoln-Mercury Inc., 374 A.2d

144, 149 (Conn. 1976); David Tunick, Inc. v. Kornfeld, 838 F. Supp. 848, 850

(S.D. N.Y. 1993) (explaining that, through UCC § 2-608(3), the UCC § 2-508(2)'s

requirement that a buyer provide notice and opportunity to cure nonconforming

goods is generally applicable in the case of a revocation of acceptance); Tucker v.

Aqua Yacht Harbor Corp., 749 F. Supp. 142, 145 (N.D. Miss. 1990) ("Although a

seller seems to have the right to cure only when the buyer rejects goods, the

Mississippi Supreme Court, by analogy to § 75-2-508 and as a matter of public

policy, has determined that before a buyer may revoke acceptance under

§ 75-2-608, the seller must be afforded a reasonable opportunity to cure."). In

these jurisdictions, revocation is only appropriate after the seller has been afforded

---

[2] UCC § 2-508 describes the procedure a buyer must follow to reject nonconforming goods prior to acceptance. Under this section, a seller is entitled to attempt to cure any nonconformity in the rejected goods within the contract time if the time for performance has not yet expired.

10

a reasonable opportunity to cure, regardless of whether the buyer accepted the goods with or without knowledge of the nonconformity.

Georgia courts have not addressed the issue; therefore, it is not clear that the district court – which appears to have adopted the minority view – erred. We need not decide this issue, however, because, as described more fully below, the Buyer invited the alleged error or waived its right to raise the issue on appeal.

B.    *Invited Error*

"It is a cardinal rule of appellate review that a party may not challenge [an error] invited by that party." Birmingham Steel Corp. v. Tenn. Valley Auth., 353 F.3d 1331, 1341 n.5 (11th Cir. 2003) (quoting Ford ex rel. Estate of Ford v. Garcia, 289 F.3d 1283, 1293-94 (11th Cir. 2002)). "Having induced the court to rely on a particular erroneous proposition of law or fact, a party in the normal case may not at a later stage of the case use the error to set aside the immediate consequences of the error." In re Carbon Dioxide Industry Antitrust Litigation, 229 F.3d 1321, 1326 (11th Cir. 2000) (citing Charter Co. v. U.S., 971 F.2d 1576, 1582 (11th Cir. 1992)); cf. Associated Indem. Corp. v. Scott, 103 F.2d 203, 209 (5th Cir. 1939) (holding that where the case below was tried "upon a misapprehension of [the] effect of the facts in law, appellant may not be prevented from pressing [on appeal] for the application, to the proven facts, of the correct principles of law[, e]specially

. . . where, as here, these principles seem to have undergone a change, or at least, to have been differently stated and applied since the trial of the case below").

In this case, the Buyer stated in its motion for summary judgment that the Seller was entitled to an opportunity to repair prior to revocation under O.C.G.A. § 11-2-608(1)(b), but argued that it had satisfied this requirement. Specifically, the Buyer claimed that the Seller "made multiple failed attempts to cure, thus satisfying the <u>statutory requirement</u> that a seller be allowed to attempt to cure." (emphasis added). Then, in reply to the Seller's responsive argument that a revocation claim required evidence of a "refusal to remedy within a reasonable time, or lack of success in the attempts to remedy," the Buyer restated its position that it had satisfied the "statutory requirement that a seller be allowed to attempt to cure" because the Seller made "several attempts to cure the very serious electrical defects in the Motor Coach before revocation, but it failed to do so." Furthermore, although the Seller argued in its motion that summary judgment on the Buyer's revocation claim was appropriate because the Buyer did not give it "either notice or opportunity to address the new issues that arose" after the initial repairs, the Buyer did not assert in response that an opportunity to cure was not required. The district court, in making its decision, adopted without discussion the Buyer's assertion that a reasonable opportunity to cure was a prerequisite for revocation. It

12

disagreed, however, with the Buyer's claim that it had satisfied this requirement and, therefore, granted summary judgment to the Seller on this ground.

Now, on appeal, the Buyer claims for the first time that the district court erred when it "read into the statute that notice and opportunity to cure must be given prior to notice of revocation[; s]uch a requirement does not exist in the plain language of the statute." Because the Buyer itself stated that its revocation claim required proof that the Seller had been given a reasonable opportunity to cure, it invited the district court to make this error – if error it be – and may not now assert that the district court incorrectly interpreted the law. See Maiz v. Virani, 253 F.3d 641, 677 (11th Cir. 2001).

Even if the Buyer had not invited the alleged error, this court will not, as a general rule, consider issues presented in the first instance on appeal in civil actions. See, e.g., BUC Int'l Corp. v. Int'l Yacht Council Ltd., 489 F.3d 1129, 1140 (11th Cir. 2007). The Buyer failed to raise its current argument either in its own motion for summary judgment or in response to the Seller's assertion that revocation was foreclosed by the Buyer's failure to provide "notice or opportunity to address the new issues that arose" after the initial repairs. Admittedly, the rule foreclosing review of issues not presented below is not jurisdictional and may be abrogated in certain exceptional circumstances. See Access Now, Inc. v.

13

<u>Southwest Airlines, Co.</u>, 385 F.3d 1324, 1332 (11th Cir. 2004) (explaining that this court has permitted issues to be raised for the first time on appeal under only five unusual circumstances). In its brief on appeal, however, the Buyer not only fails to acknowledge its lack of objection in the district court to the law applied, but it also fails to argue for the application of one of the exceptions to our rule regarding a party's waiver of an issue raised for the first time on appeal. <u>Id.</u> Consequently, we must conclude that the Buyer is precluded in this case from arguing that it was not required to provide the Seller with an opportunity to seasonably cure prior to revocation. We therefore turn to the question of whether the opportunity to cure provided by the Buyer was, as a matter of law, insufficient.

*C.     Sufficiency of the Opportunity to Cure*

The Buyer argues that if it was required to provide the Seller with an opportunity to seasonably cure prior to revocation, there is at least a triable issue of fact as to whether it satisfied this requirement. It further asserts that even if it had returned the Coach to the Seller after the initial repairs, any further attempts at repair would have been futile because the "cure" for the electrical defect was not discovered by the manufacturer until November 2005 (nearly eight months after revocation). Accordingly, the Buyer asserts that it should be excused from the requirement of providing the Seller with another opportunity to cure because the

statute should not be construed so as "to require [it] to do a futile and useless thing." BDI Distrib., Inc. v. Beaver Computer Corp., 501 S.E.2d 839, 841 (Ga. Ct. App. 1998).

We disagree. Although the statutory opportunity to "seasonably cure" does not entitle a seller to unlimited attempts to cure a defect, it does require a buyer to provide a seller with a reasonable time in which to attempt to make repairs. O.C.G.A. § 11-1-204(3) (explaining that an action is taken "seasonably" when it is taken "at or within a reasonable time"). What constitutes a reasonable time in which to cure depends on the nature, purpose, and circumstances of a particular case. O.C.G.A. § 11-1-204(2). See also Wal-Mart Stores, Inc. v. Wheeler, 586 S.E.2d 83, 85 (Ga. Ct. App. 2003). In this case, the evidence taken in the light most favorable to the Buyer shows that the Buyer gave the Seller one opportunity to cure after the defect in the electrical system first became apparent. After these initial repairs, the Buyer did not inform the Seller when the Coach continued to have additional problems; rather, it returned the Coach to the manufacturer for repairs. Nearly three months after acceptance, after the manufacturer also had made one failed attempt to correct the defect, the Buyer informed the Seller that it was revoking its acceptance of the Coach. Based upon this undisputed evidence, we agree with the district court that, as a matter of law, the Buyer provided the

15

Seller with an insufficient opportunity to cure.  Providing only one opportunity to repair – before the extent of the defect was truly apparent – is not reasonable, especially where the product in question is as complicated as a motor coach.  See e.g., Fedrick v. Mercedes-Benz, 366 F. Supp. 2d 1190, 1199 (N.D. Ga. 2005) (holding, in the context of a claim for breach of warranty, that no reasonable juror could conclude that a dealership acted unreasonably where it took the dealership six attempts over six months to successfully repair the defects within the vehicle); see also McDonald v. Mazda Motors of Am., Inc., 603 S.E.2d 456, 460 (Ga. Ct. App. 2004) ("When the purchaser returns the product to the dealer and makes the product available for repair, refusal to repair, unsuccessful repair, or repeated failures of the repair constitute a breach of the express warranty.").[3]  At the least, the Seller was entitled to notice of the additional problems and an opportunity to attempt to repair them at some time during the three months prior to the Buyer's purported revocation.  The Buyer's failure to provide this notice and opportunity bars the revocation claim as a matter of law.

The Buyer's argument that it was excused from providing the Seller with an opportunity to cure because attempts to repair would have been futile is not

---

[3] A buyer must also provide a seller with a "reasonable amount of time" to repair prior to bringing a claim for breach of warranty.  See UCC §§ 2-605, 2-607(3)(a).  We look to Georgia cases addressing breach of warranty claims, therefore, as instructive in determining what generally constitutes a "reasonable" opportunity to cure in this revocation case.

16

supported by the evidence. Certainly, we should not read an "opportunity to cure" requirement so as to "require[] a party to whistle in the wind," BDI Distrib., Inc., 501 S.E.2d at 841, but, in this case, there is no evidence that the Buyer knew prior to revocation that the Seller would have been unable to repair the Coach.[4] As such, the Buyer's failure to provide the Seller with another opportunity to cure was not, and could not have been, based on the perceived futility of providing such an opportunity.

## IV. CONCLUSION

We conclude that, under the limited circumstances of this case, the Buyer is barred by the doctrine of invited error from denying that it was required to provide the Seller with an opportunity to seasonably cure any nonconformities in the Coach prior to revocation. Because we agree with the district court that the one opportunity the Buyer provided was insufficient to satisfy this requirement, we AFFIRM the grant of summary judgment in this case.[5]

---

[4] To the extent the Buyer argues that it relied upon the service technician's statement that he had no experience repairing this model of motor coach in deciding to return the Coach to the manufacturer rather than the Seller, we note that there is no evidence establishing that this service technician was authorized to make such statements on behalf of the Seller.

[5] Accordingly, we do not address the Seller's arguments that summary judgment could have been granted on alternate grounds.