Lu, John T., J.
INTRODUCTION
The plaintiff, Dale Mustapha (Mustapha), sued the defendants, DaimlerChrysler Corp. (DaimlerChrysler) and Clark Motor Co., Inc., d/b/a Clark Chrysler Plymouth Jeep (Clark), to recover damages for the defendants’ failure to repair defects in her new Chrysler Crossfire.
The court denies the defendants’ motion for judgment notwithstanding the verdict, because the defendants are liable for breach of warranty even if they did their best to repair the defect and because the defendants’ argument that some of the verdicts are inconsistent fails to appreciate the basis in the evidence for the verdicts. The court denies the defendants’ motion for a new trial, because the court’s evidentiary rulings were correct. The court allows, in part, the defendants’ motion to alter or amend judgment and for remittitur to reflect a reduction because Mustapha is not entitled to recover for finance charges not yet paid. On Mustapha’s motion for entry of judgment on the G.L.c. 93A claim, and for attorneys fees and costs, the court orders judgment for Mustapha in the amount of $51,108.15, for attorneys fees, the court finds that the defendants did not know that the defect existed, and the court reduces the hourly rate of one of the attorneys.[2]
BACKGROUND
Mustapha purchased a new 2005 Chrysler Crossfire convertible from Clark in December of2004. Water *481 persistently leaked into the passenger compartment from the area of the car where the convertible top and side window meet, and there was a rushing air sound when driving the car. Mustapha brought her car to Clark at least four times to get the leaking and noise problem fixed. After Clark’s unsuccessful attempts at repair, Mustapha brought suit against Clark and the manufacturer, DaimlerChrysler.
The juiy found for Mustapha on her claims for breach of express warranty, breach of warranty under the Magnuson-Moss Warranty Act, and violation of the Lemon Law, G.L.c. 90, §7Nl/2, and awarded damages of $3,375.78 on the breach of warranty claims and $38,821.63 on the Lemon Law claim. The jury found for the defendants on the breach of implied warranty of merchantability claim.
DISCUSSION
I. Motion for Judgment Notwithstanding the Verdict/Motion for a New Trial
A. Standard
A party who has previously moved for a directed verdict and been denied may then move for judgment notwithstanding the verdict “[n]ot later than 10 days after entry of judgment.” Mass.R.Civ.P. 50(b). Judgment notwithstanding the verdict “should be granted ‘cautiously and sparingly,’ and should only be granted if the trial judge is satisfied that the jury ‘failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law.’ ” Netherwood v. Am. Fed’n of State, County & Mun. Employees, Local 1725, 53 Mass.App.Ct. 11, 20 (2001) (quoting Wright & Miller, Federal Practice & Procedure §2524, at 542 (1995), and Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 127 (1992)). When deciding a defendant’s motion for judgment notwithstanding the verdict, “the judge’s task, ‘taking into account all of the evidence in its aspect most favorable to the plaintiff, [is] to determine whether, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, the jury reasonably could return a verdict for the plaintiff.’ ” DeSantis v. Commonwealth Energy Sys., 68 Mass.App.Ct. 759, 762 (2007) (quoting Totsi v. Ayik, 394 Mass. 482, 494 (1985)).
B. Sufficiency of the Evidence
1. Breach of Express Warranty Claim
DaimlerChrysler argues that Mustapha presented no evidence to show that it failed to satisfy its obligations under the three-year or 36,000-miles basic limited warranty. DaimlerChiysler argues that under the warranty, its only obligation was to fix discovered defects at no cost to plaintiff. Because the dealer never refused to service the car and never made Mustapha pay for repairs, DaimlerChrysler argues that it is not liable for breach of warranty.
DaimlerChiysler’s warranty for the Crossfire states, in a section entitled “What’s Covered Under DaimlerChxysler’s Warranties”:
The Basic Limited Warranty covers the cost of all parts and labor needed to repair any defective item on your vehicle supplied by DaimlerChrysler Corporation that is defective in material, workmanship or factory preparation. There is no list of covered parts since the only exception is tires. You pay nothing for these repairs. These warranty repairs or adjustments — including all parts and labor connected with them — will be made by your dealer at no charge, using new or remanufactured parts.
In Santosuosso v. Gibbs Ford, Inc., the Appellate Division of the District Court (Flatley, J.) addressed whether a dealer’s warranty obligations are satisfied by a dealer’s best efforts to make a repair. 1992 Mass.App.Div. 167, 170 (1992). The court recognizes that the Appellate Division’s decision is not binding on this court, but finds its reasoning persuasive. In Santosuosso, the plaintiff purchased a new van from the defendant dealer, which turned out to have engine problems. Id. at 168. The plaintiff took the van to the dealer for repairs several times, but the dealer was unable to fix the problem. Id. Plaintiff then took the van to another mechanic, who had a new engine installed. Id. The court rejected the defendant’s argument that it satisfied the warranty requirement by attempting to fix the problem at no cost to the plaintiff. Id. at 170. The court held that under the van’s limited warranty, the dealer was obligated to correct the problem, whether by replacement or repair, and that the dealer’s “best efforts” were not enough. Id.
Other jurisdictions have similarly held that a manufacturer is liable for breach of express warranty if it unsuccessfully attempts to repair a defect at no cost to the plaintiff. In Welch v. Fitzgerald-Hicks Dodge, Inc., 121 N.H. 358, 361, 362 (1981), the plaintiffs purchased a new station wagon from the defendant covered by a twelve-month or 12,000 mile basic limited warranty. Almost immediately after purchase, the plaintiffs returned to the dealer for various repairs. Id. at 361. The dealer was able to make all the repairs to the plaintiffs’ satisfaction except for the “shimmy” problem that could be felt when driving the car. Id. After attempting to fix the problem several times, the dealer informed the plaintiffs that the problem was due to the tires. Id. The plaintiffs then had the tires replaced, but the shimmy continued. Id. at 362. The dealer made several other attempts to remedy the problem by replacing various parts, but none of the repairs solved the problem. Id. The plaintiffs returned the car to the dealer, and demanded a full refund of the purchase price, which the dealer refused. Id.
The plaintiffs sued the dealer and manufacturer, including a claim for breach of express warranty. Id. The defendants argued that they complied with the express warranty because the dealer corrected the problems with the car as they developed. Id. at 363. Noting that defendants admitted that there was a shimmy problem that they could not repair, the court *482 held that there was sufficient evidence to conclude that defendants breached the express warranty because they did not repair the shimmy problem in accordance with the warranty. Id. In addition to New Hampshire, other jurisdictions similarly hold that failure to repair due to refusal to repair or unsuccessful attempts to repair is a breach of the express warranty. See, e.g., Knight v. Am. Suzuki Motor Corp., 272 Ga.App. 319, 322 (2005) (“Assuming the purchaser has maintained his vehicle in the manner specified, it is the refusal to remedy within a reasonable time, or a lack of success in the attempts to remedy [that] would constitute a breach of warranty”) (emphasis supplied) (quoting Olson v. FordMotor Co., 258 Ga.App. 848,851 (2002)); Volkswagen of Am., Inc. v. Novak, 418 So.2d 801, 804 (Miss. 1982) (holding that the defendants breached their express warranty by failing to install an engine that functioned properly despite their attempts to repair the problem by installing several new engines); see generally Annot., 2 A.L.R.4th 576 §5(b) (1980).
Here, the evidence indicated that that Clark unsuccessfully attempted to repair the leak, and that after the unsuccessful attempts, the defendants wrote in a letter that the dealer had been unable to replicate the problem and that there was nothing they could do to fix it. Regardless of whether the defendants were able to replicate the leaking problem, the juiy was entitled to credit Mustapha’s evidence on the leak. Having credited Mustapha’s evidence that the leaking was occurring, DaimlerChrysler had an obligation under the limited warraniy to repair the problem. That the dealer never refused to repair the car and did not charge the plaintiff for its repair attempts does not affect DaimlerChrysler’s liability for breach of warranty. See Santosuosso, 1992 Mass.App.Div. at 170; Welch, 121 N.H. at 361; Knight, 272 Ga.App. at 322; Novak, 418 So.2d at 804. Because DaimlerChiysler did not repair the problem, there was sufficient evidence that DaimlerChiysler breached its express warranty. The juiy’s verdict will stand.
2. Breach of Written Warranty Claim Under Magnuson-Moss
DaimlerChrysler argues that because Mustapha failed to prove breach of express warranty under Massachusetts law, she also cannot prevail on her claim under the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 et seq. DaimlerChiysler states that Mag-nuson-Moss “contains no provisions creating warranties, and no guidelines concerning measure of damages and availability of certain kinds of relief, [and thus] state law controls.” See Welch, 121 N.H. at 365.
DaimlerChiysler is correct that under Magnuson-Moss, state law applies to claims brought under the Act for breach of written and implied warranties so that a breach of express warranty under state law is aviolation of Magnuson-Moss. See 15 U.S.C. §2310(d) (breach of written or implied warranty is a violation of federal law, for which the consumer may recover damages, costs, and reasonable attorneys fees); Monticello v. Winnebago Indus., Inc., 369 F.Sup.2d 1350, 1356 (N.D.Ga. 2005) (citing Bailey v. Monaco Coach Corp., 350 F.Sup.2d 1036, 1040 (N.D.Ga. 2004)). Only in the specific sections of Magnuson-Moss that prescribe a regulating rule, such as §2302 requiring the full disclosure of consumer warranties, does Magnuson-Moss provide the governing rule. Monticello, 369 F.Sup.2d at 1356 (citing Walsh v. Ford Motor Co., 807 F.2d 1000, 1012 (D.C.Cir. 1986)). In all other instances, such as where a claim is brought under the Act for breach of written and implied warranties, state warranty law provides the substantive law. See id.
Because here, Mustapha’s claim under Magnuson-Moss was for breach of express warranty, Massachusetts warranty law governs. See id.; In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., 19 F.Sup.2d 263, 267 (D.N.J. 1998) (“[I]n order for plaintiffs to state a claim for relief against Ford under the Magnuson-Moss Act, they must first establish a claim for breach of express warranty, under an applicable state law . . .”). The juiy found that under Massachusetts law, DaimlerChrysler breached its express warranty. Because the plaintiff presented sufficient evidence on her state express warranty claim, which provides the basis for her Magnuson-Moss claim, the court will not disturb the juiy’s verdict on the Magnuson-Moss claim.
C. Lemon Law Claim
DaimlerChiysler argues that the juiy’s verdict on the Lemon Law claim should be set aside because it contradicts the juiy’s verdict on the claim for breach of the implied warranty of merchantability. DaimlerC-hrysler argues that it is inconsistent for the juiy to have determined that DaimlerChiysler did not breach the implied warranty of merchantability, thus finding that the car was fit for its ordinary use and purpose, and also to have found that DaimlerChiysler violated the Lemon Law, which requires a finding that the car was substantially impaired in safety, use, or market value. DaimlerChiysler is essentially making an inconsistent verdict argument.
An inconsistent verdict can be grounds for a new trial in a civil case only if the moving party raises the issue at trial “before the juiy [is] discharged and when there [is] time to correct the verdicts.” Serv. Publ’ns, Inc. v. Goverman, 396 Mass. 567, 573 (1986), reversed on other grounds, Commonwealth v. Johnson Insulation, 425 Mass. 650, 668 n. 17 (1997); see also Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 466 (2003). Failure to raise the issue at trial constitutes waiver. Serv. Publ’ns, 396 Mass. at 573.
The defendants did not raise this issue at trial, thus they have waived their right to challenge the verdict on the ground of inconsistency. See id. Nevertheless, the juiy’s verdict on the Lemon Law and breach of implied warranty of merchantability claims were not *483 inconsistent. Based on the evidence, the jury could have concluded that the car was fit for its ordinary use and purpose of driving. The leak did not affect the mechanical operation of the car. Because the car could still operate as a car by providing a means of transportation, it could reasonably be considered fit for its ordinary use. The jury’s finding that there was no breach of the implied warranty of merchantability is supported by the evidence.
The jury also could have reasonably concluded based on the evidence that DaimlerChrysler violated the Lemon Law because the car was substantially impaired in safely, use, or market value. See G.L.c. 90, §7Nl/2 (definition of “nonconformity”). If the jury found that the car was substantially impaired in safety, use, or market value, it could have found the car to be a lemon under the Lemon Law. See id. The evidence supported a finding that the car was substantially impaired in both use and market value, as the car could not be driven in rain or snow without significant water leaking into the car and the leaking would substantially diminish the market value of the car. The jury’s findings on the Lemon Law and breach of implied warranty of merchantability claims were not inconsistent.
As another ground for setting aside the verdict on the Lemon Law count, DaimlerChrysler argues that the jury’s finding that there was a Lemon Law violation is against the weight of the evidence. It argues that Mustapha did not prove at trial that: (1) any nonconformity existed in her car; (2) the nonconformity was unable to be repaired by DaimlerChrysler after three or more attempts; or (3) the alleged nonconformity impaired the use, value, or safety of the car. See G.L.c. 90, §7Nl/2. DaimlerChrysler argues that Mustapha did not prove a nonconformity existed because Clark and Raymond Lessard were unable to find any water leaks, and that if there was any leaking problem, Mustapha caused the problem by going through a high-pressure car wash despite warnings from Clark and the owner’s manual.[3]
This argument fails because Mustapha presented sufficient evidence to show that the roof of the car leaked when it rained or snowed, and that it made a rushing air sound. Melanie Lampros testified that she had ridden in the Crossfire with Mustapha more than fifty times, and that it was raining or snowing quite a few of those times. She said that water would pour or drip in where the passenger side window meets the roof, and that the amount of water that would come in would vary depending on how heavily it was raining. The jury was entitled to credit this evidence, and discredit the defendants’ evidence that there was no problem with the car or that the plaintiff caused the problem. Given that there was sufficient evidence of the leak, the jury was warranted in finding that the car had a nonconformity that impaired the use, value, or safety of the car. See G.L.c. 90, §7N1 /2. A persistent (and significant) leaking of water into a car while driving in rain or snow can reasonably be said to be a defect that impairs the use and value of a car.
The defendants’ additional argument that there was no nonconformity with the car that impaired its use, safety, or value because Mustapha continues to drive the car also fails. That Mustapha is continuing to drive the car does not mean that the leak did not impair her use of the car, or the car’s value.
D. Motion for a New Trial
DaimlerChiysler argues that the court must order a new trial on Counts II (breach of express warranty), IV (violation of Magnuson-Moss), and VII (violation of Lemon Law, G.L.c. 90, §7Nl/2) because the verdict is against the weight of the evidence.
The court may set aside the verdict in an action that has been tried by a juiy and order a new trial “for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the Commonwealth.” Mass.R.Civ.P. 59(a)(1). “Whether to grant a motion for new trial typically lies within the sound discretion of the trial judge, and a new trial should not be ordered unless the failure to do so appears inconsistent with substantial justice and affects the substantial rights of the parties.” Int’l Totalizing Sys., Inc. v. PepsiCo, Inc., 29 Mass.App.Ct. 424, 438 (1990) (citing Galvin v. WelshMfg. Co., 382 Mass. 340, 343 (1981)). In determining whether a verdict should be set aside as against the weight of the evidence, the trial judge should consider whether the verdict “is so greatly against the weight of the evidence as to induce in his mind the strong belief that it was not due to a careful consideration of the evidence, but that it was the product of bias, misapprehension or prejudice.” Id. (quoting Scannell v. Boston Elevated Ry. Co., 208 Mass. 513, 514 (1911)).
As previously explained in ruling on DaimlerChiysler’s motion for a judgment notwithstanding the verdict on Counts II, IV, and VII, there was sufficient evidence to show that DaimlerChiysler breached its express warranty, and violated the Mag-nuson-Moss Warranty Act and the Massachusetts Lemon Law. The court is unwilling to order a new trial where the juiy’s verdict was based on the evidence presented at trial and substantial justice appears to have been done. See Galvin, 382 Mass. at 343; Int’l Totalizing Sys., 29 Mass.App.Ct. at 438. That the juiy did not credit defendants’ evidence is not a ground for granting a new trial.
1. Testimony on Mustapha’s Health
DaimlerChiysler also argues that a new trial should be ordered because the court permitted Mustapha to testify that she has a stress condition, memory loss, and fatigue as a result of a medical condition. Daimler-Chiysler claims that allowing this testimony was manifest error and highly prejudicial, especially since DaimlerChrysler had no advance notice of these im *484 pairments. Defendants did have notice of Mustapha’s medical condition prior to trial, as they filed a Motion in Limine to Preclude Testimony or Reference to Plaintiffs Medical Conditions. In ruling on defendants’ motion, the court noted in its margin endorsement that it was allowing the motion but would reconsider its order on the motion under two scenarios: (1) if the defendants offered evidence of Mustapha’s unemployment at trial; or (2) if Mustapha made a concrete offer of proof as to what she would testify to and its relevance to the case.
At trial, the court allowed Mustapha to testify only that she had a medical condition that caused her to have memory loss. Mustapha’s attorney asked her a question regarding her medical condition to give her an opportunity to explain why her trial testimony regarding the type of car that she test-drove was different from her deposition testimony, hardly an important issue in this case. Her testimony was brief and unemotional, and cannot be said to have affected the substantial rights of the defendants.[4] See Com-monwealthv. Gaudette, 441 Mass. 762, 771-72 (2004) (rejecting defendant’s argument that witness’s testimony was prejudicial because it was overly emotional where testimony was relevant to the issues in the case, the court limited witness’s testimony, and the jury instructions informed the jury not to be guided in their deliberations by sympathy or. emotion).
2. Technical Service Bulletin
DaimlerChrysler next argues that it was manifest error for the court to allow Mustapha to admit into evidence Technical Service Bulletin 23-004-05 (Bulletin) . DaimlerChrysler argues that the Bulletin was not relevant and was prejudicial because Mustapha did not have an expert link the Bulletin to any of the claimed defects. The court correctly admitted the Bulletin, as expert testimony was not required to link the Bulletin to the leak and air-rushing noise. The Bulletin concerned door glass misalignments or contacts with the roof of Chrysler Crossfires, and stated that sound or leaks into the passenger compartment could result from the misalignment. The jury was able to determine the relevance of the Bulletin without the help of an expert because the Bulletin was obviously applicable to the issue of whether Mustapha’s car, a 2005 Crossfire to which the Bulletin applied, had a defect that caused leaking during rain or snow.
II. Motion to Alter or Amend Judgment and for Remittitur
A. Standard
DaimlerChrysler has moved under Mass.R.Civ.P. 59(e) for the court to alter or amend the jury’s judgment by decreasing the damage award.
“(RJule 59(e) is designed to correct judgments which are erroneous because they lack legal or factual justification.” Pentucket Manor Chronic Hosp., Inc. v. Rate Setting Comm’n, 394 Mass. 233, 237 (1985). The court has broad discretion in ruling on a motion for remit-titur, Clifton v. Mass. Bay Transp. A nth, 445 Mass. 611, 623 (2005), but the court may not substitute its judgment of damages for that of the jury. D'Annolfo v. Stoneham Hons. Auth, 375 Mass. 650, 662 (1978). Rule 59 requires the court to “remit only so much of the damages ‘as the court adjudges is excessive,’ in order to bring the award within the range of verdicts supported by the evidence.” Clifton, 445 Mass. at 623 (quoting Mass.R.Civ.P. 59(a)).
DaimlerChrysler argues that the maximum damages award Mustapha can receive on the Lemon Law claim is $32,049.85. DaimlerChrysler argues that the jury’s award of $42,197.41 was excessive because it did not take into account the manufacturer’s rebate of $1,500, and the actual mileage on the car.
DaimlerChrysler also argues that the court erred in not instructing the jury that a damage award under the Lemon Law is complete recovery. It moves for the court to decrease the damages award by $3,375.78, which the jury awarded for breach of express warranty.
The jury’s calculation of damages was proper. Under the Lemon Law, Mustapha was to be refunded “the full contract price of the vehicle including all credits and allowances for any trade-in vehicle, less any cash award that was made by the manufacturer in an attempt to resolve the dispute and was accepted by the consumer, and a reasonable allowance for use.” G.L.c. 90, §7Nl/2(3). Mustapha was also entitled to be “reimburse[d] ... for incidental costs including sales tax, registration fee, finance charges and any cost of options added by an authorized dealer.” Id.
The jury’s calculation of Mustapha’s damages under the Lemon Law was correct except that it used the full financed amount of $42,197.41 as the total contract price. Mustapha testified at trial that the car’s mileage was about 7,000. Mustapha’s counsel argued to the jury that if it found a Lemon Law violation, it should base its calculation on 8,000 miles.[5] To reduce Mustapha’s award by her reasonable allowance of use, the jury properly multiplied the total contract price by a fraction, with the number of miles traveled as the numerator and 100,000 miles as the denominator; as follows: $42,197.41 x (8,000/100,000)= $3,375.79. See G.L.c. 90, §7Nl/2(3) (providing the calculation for reasonable allowance of use). The jury then subtracted $3,375.79 from the total contract price of $42,197.41 for a damage award of $38,821.63.[6]
This calculation should not have been based on the $42,197.41 figure, as this amount includes finance charges Mustapha had not yet paid at the time of trial. The contract price the jury should have used is $40,326.15, which reflects the cost of the vehicle, sales tax, and document fees, and does not include financing. From this, the jury should have subtracted a reasonable allowance for use of the car, subtracted the manufacturer’s rebate, and added her registration fee *485 and the $1,074.40 of finance charges she had paid up to the time of trial. The calculation is as follows:
Contract price (includes sales tax, document fees): $40,326.15
(-) Reasonable allowance for use: ($40,326.15 x (8,000/100,000) = $3,226.09] $ 3,226.09
(-) Manufacturer’s Rebate $ 1,500.00
(+) Finance charges $ 1,074.40
(+) Registration Fee $_65.00
$36,739.46
The court calculated the amount Mustapha had paid in finance charges up until the time of trial as follows: (1)determine the monthly interest rate, based on 4.24% APR: 0.0424/12 months = 0.00353; (2) multiply the monthly interest rate by the total amount financed: 0.00353 x $15,924.94 = $56.22. This represents the amount of interest paid in the first payment. (3) Subtract the interest paid from the amount of the monthly payment: $295.52 — 56.22 = $239.30. This is the amount of principal paid in the first payment. (4) Subtract the amount of principal paid from the total amount owed on the loan to get the new total amount owed on the loan. $15,924.94 — 239.30 = $15,685.64. (5) For the next month of payment, calculate interest paid that month by repeating steps 1-4 based on principal of $15,685.64, as determined in the previous step.
This was repeated for each of the 23 months that Mustapha made payments up until trial in December of 2006. This calculation accounted for Mustapha paying more interest in the beginning of the loan, when there was more principal remaining, and less towards interest and more towards principal as she continued to make loan payments.
To reflect the finance charges and manufacturer’s rebate, the juiy’s award on the Lemon Law claim must be reduced to $36,739.46.
The court will not consider DaimlerChiysler’s argument that the court erred in failing to instruct the jury on the issue of cumulative damages. During the charge conference, the parties and the court discussed the substance of the jury instructions at length. The defendants did not request an instruction on cumulative damages as to the Lemon Law and breach of express warranty claims. The defendants had more than ample opportunity to do so, particularly since the parties had agreed to submit to the jury a special verdict slip that specifically addressed cumulative damages with regard to the breach of express warranty and Magnuson-Moss Warranty Act claims, and breach of implied warranty and Lemon Law claims. Because DaimlerChiysler did not object at trial, the court will not address its argument now. See Mass.R.Civ.R 51(b); Migav. Holyoke, 398 Mass. 343,351 n.9 (1986).
III. 93A Claim
A. Introduction
Mustapha seeks damages against DaimlerChiysler and Clark for violation of the Massachusetts Consumer Protection Act, G.L.c. 93A, §9. With the agreement of the parties, the court reserved Mustapha’s c. 93A claim at trial, and will now make its findings and rulings on this claim. In making its findings, the court is not constrained by the jury’s findings on the common-law claims, as the juiy’s findings do not have a preclusive effect on the c. 93A claim. Chamberlayne Sch. & Chamberlayne Junior Coll. v. Banker, 30 Mass.App.Ct. 346, 354-55 (1991).
FINDINGS OF FACT
Based on all of the evidence presented at trial, the court finds the following facts.
(1) On or about December 28, 2004, Mustapha purchased a new 2005 Chrysler Crossfire from Clark, which was manufactured by DaimlerChiysler.
(2) Along with the sale of the 2005 Crossfire, Mustapha received express and implied warranties from DaimlerChiysler and Clarke, including a basic limited warranty covering the car for three years or 36,000 miles.
(3) Mustapha took the car to DaimlerChiysler’s authorized dealers, including Clark, at least four times for wind noise and a water leak.
(4) The water leak and wind noise would occur when it rained or snowed, and the amount of leaking would depend on the intensity of the precipitation and the speed that the car was traveling.
(5) None of the dealers or DaimlerChiysler’s technical advisor, Raymond Lessard, were able to repair the leak and noise problems. Each time Mustapha presented her car for service, Clark was unable to replicate the leaking. On one occasion, Clark hired the “Water Doctor” to investigate the problem, which also was unable to replicate the leaking.
(6) Mustapha sent a letter to DaimlerChiysler on March 3, 2005 explaining that Clark had been unable to repair the water leak, and requesting a final repair.
(7) DaimlerChiysler responded by letter dated March 9, 2005, that, “(t]he situation written about is a function of your vehicle’s design and is not a defect in material, workmanship, manufacturing or factoiy preparation. These are the only types of defects covered under the new-vehicle limited warranties. Unfortunately, there is nothing we can do to ‘fix’ the situation described.”
(8) Mustapha sent a written demand for relief pursuant to G.L.c. 93A to DaimlerChiysler and Clark on March 23, 2005. Mustapha’s demand letter stated that DaimlerChiysler and Clark’s inability to conform the car to the applicable warranties within a reasonable time violated c. 93A. Mustapha notified the defendants of the dates of the repair requests and enclosed copies of the repair orders with her letter. In the letter, Mustapha also requested that defendants repurchase her vehicle.
*486 (9) DaimlerChrysler replied to Mustapha’s demand letter on April 22, 2005. The letter sent from Impartial Services Group on behalf of DaimlerChrysler stated that Mustapha’s Lemon Law claim was invalid because the water leak was never duplicated, thus no repairs were ever required. DaimlerChrysler also stated that the vehicle was “operating as designed” and thus conforming to any express or implied warranty. DaimlerChrysler declined to repurchase Mustapha’s car.
(10) Clark responded to Mustapha’s letter on April 15, 2006. In its response, Clark stated that Mustapha did not have a valid claim because each time Mustapha presented the car for service, “there was no leaking condition found.” The letter also suggests that Mustapha was causing the problem herself by going to the car wash.[7]
(11) Mustapha filed suit against DaimlerChrysler and Clark on May 2, 2005.
(12) The case was tried before a jury and the jury returned a verdict. The jury found for Mustapha on her claims for breach of express warranty, breach of warranty under the Magnuson-Moss Warranty Act, and violation of the Lemon Law, G.L.c. 90, §7Nl/2, and awarded damages of $3,375.78 on the breach of warranty claims and $38,821.63 on the Lemon Law claim. The jury found for the defendants on Mustapha’s breach of the implied warranty of merchantability claim.
(13) A substantial amount of water would leak into the passenger side of the car when the car was driven in the rain or snow.
(14) The leak could not be replicated because Clark and the “Water Doctor” did not reproduce the conditions that occur in a car operating at mid to high speeds during a rain or snow storm.
(15) Except that Clark did not replicate the conditions, Clark did the best it could to fix the defect, and could not repair the problem.
(16) At the time they received Mustapha’s c. 93A demand letter, DaimlerChrysler and Clark did not know that the leak was occurring, and contested whether it was occurring or whether Mustapha caused the problem herself by going to the car wash.
(17) ATechnical Service Bulletin (Bulletin) for 2004-2005 model year Chrysler Crossfire Coupes and Crossfire Roadsters built on or before December 31, 2004 was issued on January 28, 2005. The subject of the Bulletin is “door glass misalignment or contacts the roof." The symptom or condition that the Bulletin addressed is, “(t]he vehicle operator may describe that the door glass contacts the roof when opening or closing the door. This condition could also result in other side glass misalignment issues such as wind like sound or water leaks into the passenger compartment.” The Bulletin then explains the measures the dealer should take to repair the problem.
(18) Although Clark had access to the Bulletin, Clark did not know about the Bulletin. Even if Clark had knowledge of it, Clark did not think the Bulletin was relevant to this problem.
(19) DaimlerChrysler did not warn Mustapha not to use an automatic car wash until after the problem had arisen.[8] The owner’s manual merely recommended hand-washing and did not prohibit the use of automatic car washes. The owner’s manual stated:
Never use a power washer to clean the top, as you may damage the top material.
If an automatic car wash is used, never use hot-wax.
Hand washing is highly recommended.
Automatic car washing equipment can damage the top material.
If you must use an automatic car wash, soft cloth systems are preferred.
B. DISCUSSION
1. Unfair or Deceptive Act or Practice
General Laws c. 93A, §2(a) makes unlawful “unfair or deceptive acts or practices in the conduct of any trade or commerce.” “Courts have deliberately avoided setting down a clear definition of conduct constituting a violation of G.L.c. 93A.” Spence v. Boston Edison Co., 390 Mass. 604, 616 (1983). “It has been held, generally, that for conduct to violate the standard of §2(a), (1) it must fall ‘within at least the penumbra of some common-law, statutory, or other established concept of fairness,’ (2) it must be unethical or unscrupulous, and (3) it must cause substantial injury to a consumer or another businessman.” Wasserman v. Agnastopoulos, 22 Mass.App.Ct. 672, 679 (1986) (quoting PMP Assocs., Inc. v. Globe Newspaper Co-, 366 Mass. 593, 596 (1975)), rev. denied, 398 Mass. 1105 (1986). Mere negligence is not a violation of c. 93A; however, a deceptive act resulting from a defendant’s negligence is. Linthicum, 379 Mass. at 388; Squeri v. McCarrick, 32 Mass.App.Ct. 203, 207 (1992).
In consumer cases, a breach of warranty generally constitutes a violation of G.L.c. 93A. Maillet v. ATF-Davidson Co., Inc., 407 Mass. 185, 193 (1990). The Attorney General’s regulations provide that it is a per se violation of c. 93A “to fail to perform or fulfill any promises or obligations arising under a warranty.” 940 Code Mass. Regs. §3.08(2); see also G.L.c. 93A, §2(c) (giving the Attorney General the authority to make rules and regulations interpreting the meaning of G.L.c. 93A, §2(a)); Purity Supreme, Inc. v. Attorney Gen., 380 Mass. 762, 775 (1980) (holding that the Attorney General’s regulations interpreting c. 93A have the force of substantive law). The Massachusetts New Car Lemon Law also states that the “failure to comply with any [of its] provisions” is a violation of c. 93A. G.L.c. 90, §7N1 /2(7); see also Latino v. FordMotor Co., 403 Mass. 247, 250 & 251 n. 1 (1988) (interpreting *487 G.L.c. 90, §7Nl/2(7) and stating that a failure to comply with a provision of the Lemon Law is an unfair or deceptive act under c. 93A). A seller’s violation of a statute intended to protect consumers, such as the Lemon Law and warranty provisions of the Uniform Commercial Code, is also considered a per se violation of c. 93 under the Attorney General’s regulations. See 940 Code Mass. Regs. §3.16(3); Calimlim v. Foreign Car Ctr., Inc., 392 Mass. 228, 235 (1984).
DaimlerChiysler and Clark are engaged in trade and/or commerce, as they manufacture and sell motor vehicles. See G.L.c. 93A, §1.
Based on the evidence and the court’s analysis on Defendants’ Motion for Judgment Notwithstanding the Verdict, DaimlerChiysler breached its express warranty by failing to repair the leaking and noise problem, and also violated the Lemon Law by failing to cure the car’s nonconformity. See G.L.c. 90, §7Nl/2 (requiring the manufacturer or its agent to make repairs necessary to make a nonconforming car conform to its warranty, or accept return of the car if the nonconformity cannot be cured after three attempts); Santosuosso v. Gibbs Ford, Inc., 1992 Mass.App.Div. 167, 170 (1992) (rejecting the defendant dealer’s argument that it satisfied its warranty obligations by attempting to repair the plaintiffs car for free); Welch v. Fitzgerald-Hicks Dodge, Inc., 121 N.H. 358, 363 (1981) (holding that defendants breached their basic limited warranty by failing to successfully repair the plaintiffs car). Because DaimlerChiysler breached its express warranty and violated the Lemon Law, Daimler engaged in an unfair or deceptive act under c. 93A. See Maillet, 407 Mass. at 193 (breach of warranty is generally a violation of c. 93A); G.L.c. 90, §7Nl/2(7) (stating that the “failure to comply with any [of the Lemon Law’s] provisions” is a violation of c. 93A).
Clark did not engage in any unfair or deceptive act or practice under c. 93A. Clark was unable to repair the problem with Mustapha’s car, and was unable to replicate the problem. Each time Mustapha presented her car for service, Clark made adjustments to the roof in an effort to stop the leaking. Clark’s attempts to replicate the problem were ineffectual but the shortcomings in the efforts do not rise to the level of a c. 93A violation. See Wasserman, 22 Mass.App.Ct. at 679 (for conduct to violate c. 93A, it must fall within some established concept of fairness, be unethical or unscrupulous, and cause the consumer substantial injury).
2. Actual Damages
Under c. 93A, a consumer who has been injured by a business’s unfair or deceptive act or practice can recover his actual damages. G.L.c. 93A, §9(3). Actual damages are the consumer’s losses which were the foreseeable consequences of the defendant’s unfair or deceptive act or practice. DiMarzo o. Am. Mut. Ins. Co., 389 Mass. 85, 101 (1983).
Consumers who receive damages for common-law or statutory violations, and who seek damages for violations of c. 93A based on the same conduct cannot collect duplicate damages. McGrath v. Mishara, 386 Mass. 74, 84-85 (1982).
Where injury is incurred because of conduct which comprises the elements of any common law, statutory, or regulatory cause of action, and which is also a violation of the Consumer Protection Act, recovery of cumulative damages under multiple counts may not to be allowed . . . However, where the acts complained of under common law, statute, or regulation are factually separable and distinguishable from those claimed to be unfair and deceptive, or where those acts have not been found to be violative of the Consumer Protection Act, there is no error in permitting separate recoveries for separable injuries.
Calimlim, 392 Mass. at 235-36.
The consumer is entitled to recover under the theory which results in the largest recovery. Rita v. Car-ella, 394 Mass. 822, 825 (1985). “In appropriate cases, preference should be given to entry of judgment under the Consumer Protection Act, especially where the Attorney General’s regulations provide that certain conduct, e.g., breach of warranty, is violative of G.L.c. 93A.” Calimlim, 392 Mass. at 235.
Because the jury awarded Mustapha damages for DaimlerChiysler’s breach of warranty and the Lemon Law violation, the court may not award Mustapha damages under c. 93A for these unlawful acts as the damages would be cumulative. See Calimlim, 392 Mass. at 236 (a plaintiff may not recover duplicative damages “where the same acts cause the same injury under more than one theory”). Mustapha has already recovered for the defendants’ failure to fix the leaking and noise problems, thus she may not recover for these injuries a second time under c. 93A. See id. (holding that the trial judge erred in awarding damages for breach of the implied warranty of fitness, breach of the implied warranty of merchantability, and for a violation of c. 93A where these claims were all based on the dealer’s same act of knowingly selling a defective car).
Mustapha is, however, eligible to receive multiple damages and attorneys fees under c. 93A despite the jury’s award on the common-law and statutory counts. See id. at 235 (allowing plaintiff to recover multiple damages and attorneys fees for defendant’s willful or knowing conduct and bad faith refusal to settle); DiMarzo, 389 Mass. at 101-02 (allowing plaintiff to recover damages under c. 93A for the defendant’s wrongful refusal to settle but not allowing damages under c. 93A that would be duplicative with plaintiffs underlying claim).
3. Multiple Damages
Under c. 93A, a consumer may recover double or treble damages if the court finds that the defendant’s *488 use or employment of the unlawful act was a willful or knowing violation of c. 93A, or if the defendant’s refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that his act or practice violated c. 93A. G.L.c. 93A, §9(3). By allowing multiple damages for knowing or willful violations of the statute, c. 93A protects against “callous and intentional violations of the law.” Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 627 (1978); see also Kansállis Fin. Ltd. v. Fern, 421 Mass. 659, 672 (1996) (“[T]he Legislature envisaged multiple damage awards against those defendants with a higher degree of culpability than that sufficient to ground simple liability”).
Mustapha argues that she is entitled to multiple damages because the defendants did not make a reasonable settlement offer in response to her written demand. “The standard for examination of the adequacy of a response to a demand for relief under G.L.c. 93A, §9(3), is whether, in the circumstances, and in light of the complainant’s demands, the offer is reasonable.” Calimlim, 392 Mass. at 234. Upon receipt of a demand letter, a defendant must investigate the facts and consider legal precedents to determine whether to make a settlement offer. Silverbranch, 376 Mass. at 628.
The defendant’s knowledge or reason to know of a c. 93A violation is measured as of the time it received the demand letter, not at the time of the alleged violation. Id. at 627-28. Thus, if the demand letter details the plaintiffs injuiy, and defendant knew that the injuiy existed and the acts complained of violated c. 93A, then the defendant’s failure to offer a reasonable settlement would be in bad faith with reason to know of a c. 93A violation. See Brown v. LeClair, 20 Mass.App.Ct. 976, 979-80 (1985) (landlord’s refusal to make repairs and offer to settle tenant’s complaints of leaking ceilings and rat infestation for $150 was a bad faith response to plaintiffs demand letter); cf. Parker v. D’Avolio, 40 Mass.App.Ct. 394, 397-98, 401 (1996) (in an action against landlord for lead poisoning of a child in which compensatory damages were $1,250,000, landlord did not act in bad faith and did not make unreasonable offer of settlement where it offered to settle for $25 because landlord had consulted expert who questioned whether elevated levels of lead had caused child’s developmental problems).
“Whether the defendants’ settlement proposal was an unreasonable refusal or made in bad faith [is] a question of fact.” Parker, 40 Mass.App.Ct. at 395. The burden of showing that the settlement offer was reasonable and made in good faith is on the defendants. Id.; see also Bobick v. U.S. Fidelity Guaranty Co., 439 Mass. 652, 660-61 (2003). “[A] wrongdoer ‘ought not wear out the claimant by unduly delaying settlement,’ when liability, including causation and damages, is clear or highly likely.” Id. at 395-96 (quoting Miller v. Risk Mgmt. Found, of Harvard Med. Insts., Inc., 36 Mass.App.Ct. 411, 418 (1994)).
In Calimlim, the plaintiffs purchased a used car from the defendant dealer which warranted that the car was in good condition. 392 Mass. at 229. The car ended up having defective brakes, needed a tune-up, and had a leak in its power steering mechanism. Id. at 231. The plaintiffs had the brakes repaired and the tune-up performed by another dealer. Id. When plaintiffs returned to the dealer to have the power steering repaired, the plaintiffs presented the dealer with the $735 bill for the brakes and tune-up. Id. The dealer denied responsibility for the bill but said it would repair the power steering if plaintiffs paid half of the cost ($184.98). Id. The plaintiffs gave the dealer a check for half the amount but later stopped payment on its check. Id. The plaintiffs spent an additional $2,500 on repair work on the car over the next few months. Id.
The plaintiffs sent a c. 93A demand letter to the dealer. Id. The dealer offered not to collect the $184.98 plaintiffs owed for the power steering. Id. The plaintiffs then sued for breach of express and implied warranties and violations of c. 93A. Id. at 233-34.
In assessing whether the dealer’s refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that his act or practice violated c. 93A, the court considered the plaintiffs’ demand letter. Id. at 234. The court noted that the plaintiffs’ demand letter alleged numerous potential violations of c. 93A and precisely explained the relief requested, which was full return of the purchase price and payment of the cost of repairs ($7,000) or a reasonable offer of settlement. Id. In response, the dealer “flatly denied ‘the validity of all the pertinent allegations,’ ” and offered not to collect on the money plaintiffs owed toward the power steering. Id. The court held that “[t]he gross inadequacy of this ‘offer’ made it patently unreasonable. Rather than promote settlement, such a rejoinder represents a summons to litigation.” Id.
Given that the dealer sold a car it knew was defective, and that the dealer’s offer not to collect the $184.98, which plaintiffs may not have owed the dealer anyway, was significantly less than the amount of money plaintiffs had spent to repair the car, the court held that the dealer’s offer was unreasonable. Id. Because the trial court found that the dealer knew it sold a car that was defective, the dealer also knew or should have known that it violated c. 93. Id. at 235. With the knowledge that it had violated c. 93A, the dealer was required to make a reasonable offer of settlement in response to plaintiffs’ c. 93A demand letter. See G.L.c. 93A, §9(3) (a defendant is liable for multiple damages if its refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that his act or practice violated c. 93A).
Similarly, in Silverbranch, the court upheld the trial judge’s award of multiple damages for the defendant’s *489 bad faith refusal to settle with knowledge that the practice complained of violated c. 93A. 376 Mass. at 628. In Silverbranch, the plaintiffs purchased a home from Silverbranch. Id. at 623. The plaintiffs directly asked the president of Silverbranch whether the property had good drainage, to which he responded that it did. Id. The trial court found that at the time the president said so, that he knew that the land had a drainage problem. Id. at 624. The plaintiffs sent a demand letter to Silverbranch, which did not respond with an offer of settlement. Id.
The court found that there was ample support for the trial judge’s finding that Silverbranch refused to settle in bad faith with reason to know that its misrepresentation was an unfair or deceptive act under c. 93A. Id. at 628. The court noted the plaintiffs’ thorough explanation in their demand letter of how Silverbranch violated c. 93A (by violating the Attorney General’s regulations on disclosing facts to buyers). Id. Because Silverbranch should have known and actually knew that its actions violated c. 93A, its failure to offer a reasonable settlement entitled plaintiffs to multiple damages. Id.
In this case, DaimlerChrysler and Clark did not know that the leak persisted and went to trial on the issue of whether the leak was actually occurring or whether Mustapha was responsible for it. Although the defendants were less than stellar in their attempts to replicate the leaking problem, at the time they received Mustapha’s demand letter, they did not know or have reason to know that their actions violated c. 9 3A. Unlike in Silverbranch and Camlimlim, where the trial judge found that the defendants knew that their actions violated c. 93A at the time they received the 93A demand letters, the defendants did not know that the leak was occurring and, as a result, did not know that the leak was covered by its basic limited warranty. DaimlerChrysler is liable for breach of warranty and violation of the Lemon Law because the jury found that the leak was actually occurring and was a defect covered by the basic limited warranty. However, because DaimlerChrysler and Clark did not know that the leak was occurring despite conducting an investigation of Mustapha’s claim, they cannot be said to have refused to settle, in bad faith, with knowledge or reason to know that their actions violated c. 93A. See G.L.c. 93A, §9(3) (a defendant is liable for multiple damages if its refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that its act or practice violated c. 93A).
For the same reason that Mustapha cannot collect multiple damages for the defendants’ failure to offer her a settlement, Mustapha cannot receive multiple damages for the defendants’ refusal to fix the leak. Mustapha wrote a letter to DaimlerChrysler on March 2, 2005 in which she requested assistance in getting her car repaired. DaimlerChrysler responded that the problem was not covered by the warranty because it was “a function of [the] vehicle’s design.” Mustapha argues that DaimlerChrysler engaged in a willful or knowing violation of c. 93A by refusing further attempts to fix the car. As DaimlerChrysler and Clark contested whether the leak was occurring and if Mustapha caused the problem by going to a car wash, defendants cannot be said to have willfully or knowingly violated c. 93A in refusing further repairs. Cf. Brown, 20 Mass.App.Ct. 976, 980 (1985) (defendant landlord engaged in knowing or wilful violation of c. 93A where the evidence indicated that he refused to make necessary repairs claiming that the repairs had already been made and the record indicated that no repairs had ever been made despite a prior tenant’s requests). Although the defendants were not exemplary in the skill they exhibited in their attempts to replicate the leaking, they did try in good faith to replicate and repair the problem. Their failures to do so are not knowing or wilful violations of the statute.
IV. Attorneys Fees and Costs
A. Attorneys Fees
In Massachusetts, a prevailing party can recover attorneys fees only if payment of the fees is permitted by statute or court rule, or agreed to by the parties by stipulation or contract. Walden v. Am Honda Motor Co., Inc., 413 Mass. 320, 322 (1992).
A parly may recover attorneys fees only on claims that are successful unless the unsuccessful claims are “sufficiently interconnected” with the claims on which the plaintiff prevails. Killeen v. Westban Hotel Venture, L.P., 69 Mass.App.Ct. 784, 792-93 (2007) (citing Peckham v. Cont’l Cas. Ins. Co., 895 F.2d 830, 842 (1st Cir. 1990)); see also Hensley v. Eckerhart, 461 U.S. 424, 440 (1983); Krewson v. Quincy, 74 F.3d 15, 19 (1st Cir. 1996).
In general, attorneys fees awarded under statutes such as G.L.c. 93A should not include the cost of efforts to litigate “independent claims that happen to be joined with statutory claims in a single proceeding.” Simon v. Solomon, 385 Mass. 91, 111-12 (1982). However, where the separate counts in a case “represent various elements of damage arising from a single chain of events],]” the court need not apportion the legal fees between the statutory claims and common-law claims. Id. at 112; see also DrywallSys., Inc. v. ZVIConstr. Co., Inc., 435 Mass. 664, 673 (2002); DiMarzo v. Am. Mut. Ins. Co., 389 Mass. 85, 106 (1983).
Mustapha prevailed on her claims for breach of express warranty; breach of written warranty under the Magnuson-Moss Warranty Act; violation of the Lemon Law; and violation of G.L.c. 93A, and did not prevail on her claim for breach of the implied warranty of merchantability.
Mustapha is eligible to receive attorneys fees for time expended on the c. 93A claim and the Magnuson-Moss Warranty Act claim because these statutes specifically provide for awarding attorneys fees to the *490 prevailing party. See G.L.c. 93A, §9(4) (a prevailing party shall be awarded reasonable attorneys fees and costs incurred in connection with bringing the c. 93A action); 15 U.S.C. §2310(d)(2) (allowing the court to award to a prevailing consumer “as part of the judgment a sum equal to the aggregate amount of costs and expenses (including attorneys fees based on actual time expended)” that the court deems reasonably incurred in the bringing and prosecution of the action). Attorneys fees are not recoverable, however, for breach of express warranty or violation of the Lemon Law. See G.L.c. 90, §7Nl/2(6) (stating that attorneys fees are available if a state-certified new car arbitration determines that a manufacturer failed to replace a car or refund the purchase price when such relief was required).
Although attorneys fees are not ordinarily recoverable for claims brought under the Lemon Law and for breach of express warranty, the court will not apportion Mustapha’s attorneys fees to exclude time expended on these claims because the claims arose from the same events as those giving rise to the c. 93A and Magnuson-Moss Warranty Act claims. DaimlerC-hiysler violated c. 93A because it breached its express warranty and violated the Lemon Law. DaimlerC-hiysler violated the Magnuson-Moss Warranty Act because it breached its express warranty under state law. The court will not attempt to apportion the time spent on Mustapha’s various claims because they all arose from the same chain of events, and are factually and legally interrelated. See Drywall Sys., Inc., 435 Mass. at 673 (legal fees expended on c. 93A claims need not be apportioned from other claims pursued in arbitration in which legal fees are ordinarily unavailable, because c. 93A claims arose from the same events as the claims pursued in arbitration); Simon, 385 Mass. at 111-12 (attorneys fees for breach of the covenant of quiet enjoyment need not be apportioned from claim for reckless infliction of emotional distress, in which attorneys fees are not recoverable, because the verdicts represented “various elements of damage arising from a single chain of events — the flooding in [plaintiffs] apartment”).
The court will similarly not attempt to distinguish the legal fees incurred in bringing the claims that were dismissed before trial from the other claims. In her complaint, Mustapha pled sixteen counts. Before trial, the counts against DaimlerChiysler for breach of contract and revocation of acceptance were dismissed. The claims against Clark for breach of express warranty, violation of the Lemon Law, and revocation of acceptance were also dismissed.
Although Mustapha did not prevail on these claims, the court will not attempt to differentiate the hours spent on these claims versus the claims Mustapha prevailed on at trial. Because Mustapha veiy substantially prevailed at trial and because the unsuccessful claims are interconnected with the successful claims, as they require proof of the same or similar elements, Mustapha is eligible to receive attorneys fees even on her unsuccessful claims. See Killeen, 69 Mass.App.Ct. at 792; Hensley, 461 U.S. at 440 (holding that a plaintiff should recover attorneys fees on unsuccessful claims if the claims in the case are related and plaintiff has substantially prevailed in the case); cf. Krewson, 74 F.3d at 19 (concluding that the plaintiff failed to meet his burden of showing successful and unsuccessful claims were interconnected where claims could be separated, and were considered separately at trial, but noting that some of the work on the unsuccessful claims could be included in the fee award so long as the work was reasonably necessary for prosecution of the successful claims). For example, although the claim for breach of contract was dismissed, Mustapha had to prove similar elements to prevail on her breach of warranty claims. The same is true for Mustapha’s unsuccessful claim for breach of the implied warranty of merchantability.
The court must ensure, however, that the attorneys fee award is reasonable. The trial judge has discretion to determine the amount of a reasonable attorneys fee. Berman v. Linnane, 434 Mass. 301, 302-03 (2001). To determine the reasonableness of a fee, the court uses the “lodestar method.” Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993). Under this approach, a fee award is determined by multiplying the number of hours reasonably spent on a case by a reasonable hourly rate. Id. at 324. “In making this calculation, the court should consider the time counsel spent on the case exclusive of hours that are excessive, redundant, duplicative, or unproductive.” T&D Video, Inc. v. Revere, 66 Mass.App.Ct. 461, 476 (2006), reversed on other grounds, 450 Mass. 107 (2007). When determining whether a fee is reasonable, the court should consider; the nature of the case and issues presented; the time and labor required; the amount of damages involved; the result obtained; the experience, reputation, and ability of the attorney; the price customarily charged for similar services by other attorneys in the same area; and the amount of awards in similar cases. Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979), reversed on other grounds, Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 418 Mass. 737 (1994). “No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required.” Berman, 434 Mass. at 303.
Mustapha has the burden of showing that the number of hours and hourly rates are reasonable. Soc’y of Jesus of New England v. Boston Landmarks Cornm’n, 411 Mass. 754, 759 (1992).
Mustapha’s attorneys have submitted affidavits stating their hourly rates and the number of hours they worked on the case. They seek compensation of $65,850.00 for 219.5 hours billed, costs of $1,086.15, and statutory interest under G.L.c. 235, §8.
*491 1. Experience, Reputation, and Ability of the Attorneys
Mustapha has been primarily represented by Mark Romano (Romano), a member of the law firm of Consumer Legal Services, P.C., which specializes in representing consumers in Lemon Law and breach-of-warranty claims nationwide. Romano is an experienced litigator with twenty-seven years experience. He appeared in this case pro hac vice, and has tried about ninety jury trials in six different states, of which about sixty were Lemon Law or consumer rights cases. For his services, Romano billed Mustapha Consumer Legal Services’ standard hourly billing rate for consumer-rights litigation in Massachusetts, which is $300 per hour.
Martin I. Flax (Flax) assisted Romano during trial, serving as co-counsel. Flax has been a member of the bar of the Commonwealth since 1985. He is a solo general practitioner in Norfolk County handling consumer, real estate, criminal, family, and probate matters. In 2004, he affiliated with Consumer Legal Services as their principal attorney for Massachusetts and Rhode Island. For his services, Flax billed Mustapha $300 an hour.
2. Nature of the Case, Issues Presented, and Time and Labor Required
This case involved complex, specialized areas of the law, including Lemon Law, breach of warranty, and the Magnuson-Moss Warranty Act. Mustapha’s claims presented complicated legal issues that required the knowledge of Attorney Romano, who is an expert in the field of consumer rights.
Before trial, Flax prepared written discovery, deposed four witnesses, and reviewed documents from DaimlerChrysler and Clark. Romano and Flax were also required to defend defendants’ various motions, including a motion for summary judgment, and to prepare for trial.
The defendants object to the approximately thirty-eight hours billed for Flax’s attendance at trial, totaling $11,340.00. Defendants argue that his attendance was completely unnecessary given Romano’s extensive trial experience. Defendants also note that Flax did not examine witnesses, argue any motions, or take part in discussions at sidebar.[9] Thus, defendants argue that Mustapha’s counsel did not exercise good billing judgment by including these hours that are “excessive, redundant or otherwise unnecessary.” See Hensley, 461 U.S. at 434; see also Hart v. Bourgue, 798 F.2d 519, 523 (1st Cir. 1986).
In Hart, the First Circuit cut a fee for multiple attorneys attending motion hearings. 798 F.2d at 523. Hart involved complex issues of supervisory and municipal liability in the civil-rights context. Id. at 521. The plaintiff was represented by one lead counsel, six associates, and five law students. Id. The court scrutinized the request for fees for 910 hours because the case never went to trial, but settled beforehand. Id. The court stated:
Further duplication of effort is observable by dual attendance at motion hearings, no matter how inconsequential. This may have been good experience for the onlooker; it did not advance the case. Plaintiff forgets, a not uncommon practice these days, our caution in King v. Greenblatt, 560 F.2d 1024, 1027 (1st Cir. 1977), that the time for two or three lawyers in a court-room or conference, when one would do, “must obviously be discounted.”
Id. at 523.
Unlike in Hart, Mustapha’s case did go to trial, and the presence of Flax at trial likely advanced Mustapha’s cause. Cf. id. at 521-23. The law applicable to this case was complicated and Flax had extensive knowledge of the facts and law because of his pre-trial work. Having Flax at trial to confer with was appropriate and likely aided Romano’s presentation of the case to the jury. Cf. Soc’y of Jesus, 411 Mass. at 760 (reducing the fee award to reflect unnecessary and duplicative efforts by three attorneys who spent a total of over eighty hours preparing for oral argument on their fees’ motion, and billed for the time spent by all three to attend the hearing); see also Rodriguez-Hernandez v. Mtranda-Velez, 132 F.3d 848, 860 (1st Cir. 1998) (“Time spent by two attorneys on the same general task is not, however, per se duplicative”).
Although Flax’s work in preparation for trial and attendance at trial was appropriate, he should not receive the same hourly rate as Romano because he had less experience in Lemon Law/consumer rights law and played a more limited role at trial. See Linthicum, 379 Mass. at 388-89 (judge may consider experience of attorney and time and effort required given the nature of the case). Flax’s hourly rate will be reduced to a reasonable rate given his experience and involvement in the case, which the court determines to be $200 per hour for his pre-trial and non-trial time, and $140 per hour for his trial time.
This reduction in hourly rate reduces Mustapha’s attorneys fees as follows: Flax billed 97.8 hours for work pre-trial and after trial. He billed $29,340.00 for this time (97.8 hours x $300 per hour = $29,340). Reducing his rate results in fees of $19,560.00 (97.8 hours x $200 per hour = $19,560). This results in a reduction of fees for his pre-trial and after-trial time of $9,780.00 ($29,340.00 — $19,560.00 = $9,780).
Flax billed 37.8 hours for trial. He billed $11,340.00 for this time (37.8 hours x $300 per hour = $11,340). Reducing his rate to $140 for trial time results in fees of $5,292.00 (37.8 hours x $140 per hour = $5292). This results in a reduction of fees of $6,048.00 ($11,340.00 — $5,292.00 = $6,048). Mustapha’s attorneys fees shall be reduced by $15,828.00 ($6048.00 + $9780.00 = $15,828), the total amount of reduction.
The defendants also argue that counsels’ time-sheets lack sufficient specificity. For example, defendants complain that over $2,400.00 was spent on a “draft letter” *492 with no explanation of what the letter was about or to whom it was addressed, and that $2,400.00 (eight hours) was billed to “prepare, travel and appear at depos” with no indication as to who was deposed. On this point, at the hearing on post-trial motions, defendants cited a Superior Court case, Stanford v. Pres. & Fellows of Harvard Colt, No. 99-4042 (Suffolk Super. Ct. Mar. 21, 2001) (Cratsley, J.) [15 Mass. L. Rptr. 360).
In Stanford, the court reduced a fee award because plaintiffs counsel’s billing records were not detailed enough for the court to be able to determine the time spent on a particular claim for which plaintiff could recover attorneys fees. Id. Plaintiff could not recover attorneys fees for all of her claims, so it was important in that case for the court to know specifically when work was done on a particular claim. See id.
Unlike in Stanford, the court here is not parsing out the work done on certain claims. Because of this, it does not matter that Mustapha’s attorneys did not always state specifically what claim it was working on for which client, or what the precise letter or deposition at issue was. However, the court must ensure that the tasks billed and amount of time spent were reasonable and necessary. See Fontaine, 415 Mass. at 326; Linthicum, 379 Mass. at 388-89. After thoroughly examining the time-sheets, the court concludes that all of the hours billed were reasonable and necessary.
3. Amount of Damages Involved and Result Obtained
At issue was the $40,326.15 purchase price of Mustapha’s car. Mustapha substantially prevailed against formidable opposition, as the jury found in her favor on the Lemon Law and breach of warranty claims.
4. Price Customarily Charged for Similar Services by Attorneys in Same Area
To meet her burden of showing that Romano’s and Flax’s hourly rates were reasonable, see Soc’y of Jesus, 411 Mass. at 759, Mustapha submitted a survey conducted by Mass Lawyers Weekly that provides a sampling of the hourly rates in 2005 of one hundred Massachusetts lawyers. 2005 Salary Survey, 34 Mass. Law. Weekly497,497-01 (Oct. 24,2005). The court notes that this is not a scientific survey, but does accurately reflect, in a general way, market rates for attorneys practicing in Massachusetts at the relevant times.
Given the complexity of issues presented in this case and Romano’s twenty-seven years of experience, Romano’s hourly rate of $300 is reasonable and commensurate to the rates charged by similarly experienced attorneys practicing Lemon Law/consumer rights litigation in Essex County. Manufacturers and dealers routinely pay Consumer Legal Services’ fee of $300 per hour in consumer rights cases when consumer claims are settled.
The court has previously indicated that it is reducing Flax’s fee to $200 per hour for pre-trial and post-trial work, and $140 per hour for trial time, to adjust his billing rate to that customarily charged for similar services by attorneys practicing in Essex County.
B. Costs
Mustapha seeks to recover her costs of $1,086.15 incurred during this litigation. Mustapha is seeking reimbursement for the cost of: her filing fee; sheriff s fees for service of process; deposition transcripts; parking; photocopying; and courier service. Defendants have not objected to Mustapha’s costs. Mustapha will be reimbursed her costs of $1,086.15, as these costs have been reasonably incurred in the course of litigation. See G.L.c. 261, § 1 (stating that the prevailing party in a civil action “shall recover his costs, except as otherwise provided”).
ORDER
The (1) defendants’motion for judgment notwithstanding the verdict, or alternatively, motion for a new trial is DENIED; (2) the defendants’ motion to alter or amend judgment and for remittitur is ALLOWED IN PART. The jury’s verdict on Count VII (Lemon Law claim) shall be reduced by $2,082.17; (3) on plaintiffs motion for entry of judgment on her G.L.c. 93A claim, and for attorneys fees and costs, judgment shall enter for Mustapha for her attorneys fees in the amount of $50,022.00.
Final judgment shall enter for the plaintiff on: Count II for breach of express warranty in the amount of $3,375.78; Count IV for violation of the Lemon Law in the amount of $36,739.46. Including attorneys fees ($50,022.00) and costs ($1,086.15), Mustapha’s total judgment is $91,223.39.

The court conducted a hearing on the motions.

At trial, the defendants argued that Mustapha caused the leak after being warned that taking the car to a car wash would cause the leak. The jury obviously rejected this argument and to the extent that the court is called upon to find facts on the issue, the court finds that Mustapha was not warned, until it was too late, that she was causing the leak and Mustapha did not knowingly cause the leak. The court finds that the purported warnings in the owner’s manual were far too weak to be construed as putting Mustapha on notice of possible damage.

Mustapha’s testimony was, as a whole, rather unemotional.

The defendants’ expert testified that the car’s mileage was 7,900 when he inspected it.

The jury’s calculation of $42,197.41 — $38,821.63 was off by one cent. The court does not deem this difference significant.

The letter stated, “Ms. Mustapha has been advised on all visits that in accordance with the owner’s manual, ‘hand washing is highly recommended; automatic washing equipment can damage the top material.’ ”

For additional findings of fact, see footnote 3.

At the hearing on the post-trial motions in February, Flax stated that he “helped assist in the presentation of the case to the jury and also participated in side-bar conferences.”